STATE OF CONNECTICUT *v.* RICHARD PATTERSON
(14299)

CALLAHAN, BORDEN, BERDON, KATZ and PALMER, Js.

Argued June 10—decision released August 24, 1993

*William Holden,* public defender, with whom, on the brief, were *Barry A. Butler,* assistant public defender, and *Michael A. Heran,* certified legal intern, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert Lacobelle,* assistant state's attorney, for the appellee (state).

PALMER, J. The defendant, Richard Patterson, was charged with the crime of murder in violation of General Statutes § 53a-54a (a).[1] He elected to be tried by a three judge court; see General Statutes § 54-82; and was convicted as charged. At the conclusion of the trial, the defendant was sentenced to serve a term of forty-five years to be suspended after the expiration of thirty-five years. On appeal,[2] the defendant claims that: (1) the state failed to prove the element of intent to commit murder beyond a reasonable doubt; and (2) the defendant's evidence established, as a matter of law,

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with intent to cause the death of another person."

[2] The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b) (3) which provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

his affirmative defenses of insanity[3] and, in the alternative, extreme emotional disturbance. We remand the case to the three judge court, pursuant to Practice Book § 4061,[4] for a further articulation of its determination that the defendant committed the crime of murder.

We briefly summarize the evidence presented at trial. On the evening of October 21, 1988, the Bridgeport police received information about a single car accident on the east side of the city. When they arrived at the scene, the police found a man, subsequently identified as Nesbourne Wright, slumped over in the driver's seat of a car that had crashed into a fence. Wright's breathing was labored and he was bleeding profusely from the head. He died shortly thereafter from a wound caused by a bullet fired at close range to the right temple.

Desmond Clark, a distant relative of the defendant, testified that he saw the defendant and the victim at

---

[3] General Statutes § 53a-13 provides in relevant part: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription."

[4] Practice Book § 4061 provides: "REVIEW BY THE COURT

"The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision.

"It is the responsibility of the appellant to provide an adequate record for review."

a variety store on the evening of October 21, 1988, and that the victim agreed to give both Clark and the defendant a ride home. The victim drove to the defendant's home and double parked on the street in front of the defendant's residence. Clark then learned that the victim was not planning to take him home first, as the defendant had requested, so Clark got out of the car. As Clark was walking toward the back of the car, he heard gunshots, saw that the defendant was still in the car and then observed the defendant running alongside his residence with a gun in his hand.

On October 24, 1988, Bridgeport police officers searched the defendant's home and seized two handguns from the defendant's bedroom. A forensic firearms expert testified that two of the bullets retrieved from the scene of the shooting, one extracted from the victim's head and the other from the car, were fired from one of the handguns found in the defendant's home. At the conclusion of this testimony, the state rested and the defendant moved for a judgment of acquittal, which the court denied.

The defendant presented testimony from several expert witnesses and family members to establish that he lacked the requisite mental capacity to commit the crime of murder. The defense called three psychiatrists, including a psychiatrist who had been retained by the state, all of whom testified that the defendant suffered from chronic paranoid schizophrenia and that he had suffered from this illness for at least one year prior to the fatal shooting of the victim. A fourth defense expert, a clinical psychologist, diagnosed the defendant as psychotic. The defendant's family members recounted incidents of bizarre and eccentric behavior by the defendant and described his mental and physical deterioration over a period of approximately two years prior to the killing.

The state called two rebuttal witnesses, a Bridgeport police detective and a psychiatric nurse. The officer provided evidence, obtained in a discussion with the defendant's mother, that the defendant behaved in a "crazy" manner when he smoked marijuana, and the nurse testified about certain conduct of the defendant while he was incarcerated at the Bridgeport correctional center, which the state argued, tended to rebut the defendant's affirmative defenses.

At the close of the evidence, the defendant again moved for a judgment of acquittal. The motion was denied by the three judge court. Following closing arguments of counsel, the court, on January 16, 1991, unanimously found the defendant guilty of murder. The presiding judge issued the decision of the court as follows: "The panel of judges designated for the trial of this case, after having deliberated on the issues and the facts and the law, unanimously determined that the accused is guilty as charged of the crime of murder." The record contains no findings of fact or other explanation of the court's decision.[5]

On June 12, 1991, the defendant filed a nine page motion for articulation, pursuant to Practice Book § 4051,[6] requesting the three judge court to articulate

___

[5] On January 16, 1991, the defendant filed a motion for examination prior to sentencing pursuant to General Statutes (Rev. to 1989) § 17-244 (a) and (b), now § 17a-566 (a) and (b), apparently without objection by the state. The defendant's request, based principally on the evidence introduced at trial, noted as well that "[a]pproximately seven to eight months prior to the commission of the crime, which occurred on October 21, 1988, Mr. Patterson was examined by a psychiatrist in Jamaica and was given antipsychotic medication." The three judge panel unanimously denied this motion, without explanation, on January 28, 1991.

[6] Practice Book § 4051 provides: "RECTIFICATION OF APPEAL; ARTICULATION

"An original and three copies of a motion for rectification or articulation shall be filed with the appellate clerk and forwarded by such clerk to the trial judge. The trial judge shall file the ruling on the motion with the appellate clerk.

its finding of guilty. After summarizing the evidence in some detail, the motion sought articulation with respect to the following six questions: "(1) Did the panel find the expert and lay evidence pertaining to the defendant's mental disorder to be credible; (2) If so, did the panel find that said psychiatric and psychological evidence had any relation to the question of the guilt of the defendant; (3) If the panel found that such expert and lay psychiatric and psychological evidence pertaining to the defendant's mental disorder was not credible what was the basis of this conclusion by the panel; (4) If the panel found that such expert and lay evidence pertaining to the defendant's mental disorder bore no relation to the question of the guilt of [the defendant], on what did it base such conclusion; (5) What was the basis of the court's rejection of [the] defense of extreme emotional disturbance; and (6) What was the basis of the panel's decision to deny [the defendant's] motion for examination pursuant to [General Statutes (Rev. to 1989)] § 17-244?"

On December 3, 1991, the three judge court issued an articulation, which stated in full: "After delibera-

"Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record or seeking an articulation or further articulation of the decision of the trial court shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper presentation of questions reserved; or the trial court may approve a stipulation of counsel that such a correction or addition be made, provided the motion or stipulation is presented before the appeal is ready to be assigned for hearing and only by leave of the supreme court or the appellate court thereafter. The action of the trial judge as regards such a correction or addition may be reviewed by the court in which the appeal is pending under Sec. 4054. Nothing herein is intended to affect the existing practice with respect to opening and correcting judgments and the records on which they are based.

"Corrections made before the record is prepared shall be included in it. If the record has been prepared, the appellate clerk may prepare a supplemental record, to be distributed in the same way as the original record."

tions and consideration of the entire evidence, we unanimously find that the accused Richard Patterson with the intent to cause the death of Nesbourne Wright did shoot and kill Nesbourne Wright." The defendant failed to seek this court's review of that articulation.[7] The defendant did, however, file a second motion for articulation on September 10, 1992, requesting that the three judge court "articulate the basis for [its] statement" of December 3, 1991. The defendant's second motion again sought a response from the court to the six questions posed in his initial motion for articulation. The court unanimously denied the defendant's second motion for articulation, without explanation, on December 8, 1992.

The defendant challenges the sufficiency of the state's evidence on the element of intent, and also contends that the three judge court could not reasonably have rejected his affirmative defenses of insanity and extreme emotional disturbance. On appeal, we undertake a searching and independent review to determine whether the court could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti*, 219 Conn. 605, 609–10, 595 A.2d 306 (1991). If "necessary to the proper disposition of the cause"; Practice Book § 4061; however, we may remand the case to the trial court for a clarification

---

[7] "[Practice Book] Sec. 4054. —REVIEW OF MOTION FOR RECTIFICATION OF APPEAL OR ARTICULATION

"Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Sec. 4051 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. If the motion depends upon a transcript of evidence or proceedings taken by a court reporter, the procedure set forth in Sec. 4053 shall be followed. Corrections which the court makes or orders made pursuant hereto shall be included in the prepared record in the same way in which, under Sec. 4051, corrections made by the trial judge are included."

or explication of its decision. See, e.g., *State* v. *Pollitt,* 199 Conn. 399, 416–17, 508 A.2d 1 (1986); *State* v. *Cobbs,* 198 Conn. 638, 643, 504 A.2d 513 (1986); *State* v. *Lafferty,* 189 Conn. 360, 363, 456 A.2d 272 (1983); *State* v. *Ostroski,* 184 Conn. 455, 460–61, 440 A.2d 166 (1981). We conclude that a remand to the three judge court for a further articulation of its findings is appropriate in this case.

The articulation rendered by the court on December 3, 1991, recited only its conclusory finding that the defendant shot and killed the victim with the intent to do so. In the absence of a further explanation by the court setting forth the factual basis for its decision, we would review the record to ascertain the facts upon which the court's decision *may* have been based. In view of the significant and closely contested issues raised by the defendant and the crucial importance of the court's fact-finding with respect to those issues, a further articulation by the court of the facts upon which its decision *was* based will substantially assist us in resolving the defendant's claims.[8] That articulation, although it need not be responsive to all of the questions set forth in the defendant's motions for articulation, should at least reflect the trial court's basic findings with regard to the defendant's two affirmative defenses.

The case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[8] We intimate no view whatsoever with respect to our eventual determination of the issues raised in this appeal.