THE DIME SAVINGS BANK OF WALLINGFORD *v.*
CARL CORNAGLIA ET AL.
(12098)

O'CONNELL, LAVERY and HEIMAN, Js.

*(One judge dissenting)*
Argued November 9, 1993—decision released February 8, 1994

*Donald C. Lunt,* for the appellant (defendant Rose Marie Cornaglia).

*Bruce A. Fontanella,* for the appellee (plaintiff).

HEIMAN, J. The defendant Rose Marie Cornaglia[1] appeals from an order denying, in part, her motion to open and modify the judgment of foreclosure by sale rendered in favor of the plaintiff. The defendant claims that the trial court improperly refused to order that the plaintiff (1) seek satisfaction of the underlying debt from the property of the defendants Carl Cornaglia and Lucy Cornaglia before seeking recourse against her property, and (2) assign the debt and mortgage underlying the foreclosure action to her upon payment by her to the plaintiff of the amount of the judgment. We affirm the judgment of the trial court.

The plaintiff filed a complaint for foreclosure dated January 9, 1992. The complaint alleged that, on January 30, 1989, the defendants Carl Cornaglia and Lucy Cornaglia by their note, promised to pay the plaintiff the sum of $150,000 together with interest. The complaint further alleged that, as security for the note, the defendants Carl Cornaglia and Lucy Cornaglia mortgaged to the plaintiff two properties, parcel B and the

---

[1] The defendants in this action were Carl Cornaglia, Lucy Cornaglia, Rose Marie Cornaglia, The Dime Savings Bank of Wallingford and Colony Savings Bank. Only Rose Marie Cornaglia is a party to the appeal and we refer to her in this opinion as the defendant.

North Branford Road property, both located in Wallingford. The complaint also alleged that, as further security for the note, the defendant Rose Marie Cornaglia mortgaged to the plaintiff property known as the South Main Street property, also located in Wallingford.[2] None of the defendants filed an answer to the complaint or special defenses.[3] See Practice Book § 236.[4]

---

[2] The dissent states that, as a matter of law, this allegation creates a surety. The case law cited in the dissent, however, does not support this assertion. *Every* case cited in the dissent involves a suretyship between a husband and wife, a contract to which a different legal standard applies. The law controlling surety transactions among persons other than spouses is not affected by the law controlling such transactions between husbands and wives that was developed to protect the sanctity of marriage. See 5 S. Williston, Contracts (4th Ed. 1993) § 11 et seq.

[3] Default judgments were entered against the defendants Lucy Cornaglia and Colony Savings Bank for failure to appear. Default judgments were entered against the defendants, Carl Cornaglia, Rose Marie Cornaglia and The Dime Savings Bank of Wallingford for failure to disclose a defense.

We do not dispute the dissent's assertion that Rose Cornaglia, if found by the trial court to be a surety, was entitled to claim that the bank first collect from Carl Cornaglia. Rose Cornaglia, however, never filed a special defense asserting such a right nor did she ever make a timely claim for this relief.

[4] Practice Book § 236 provides: "In any action to foreclose or discharge any mortgage or lien or to quiet title, or in any action upon any written contract, in which there is an appearance by an attorney for any defendant, the plaintiff may at any time file and serve in accordance with Sec. 120 a written demand that such attorney present to the court, to become a part of the file in such case, a writing signed by him stating whether he has reason to believe and does believe that there exists a bona fide defense to the plaintiff's action and whether such defense will be made, together with a general statement of the nature or substance of such defense. If the defendant fails to disclose a defense within five days of the filing of such demand, the plaintiff may file a written motion that a default be entered against the defendant by reason of the failure of the defendant to disclose a defense. If no disclosure of defense has been filed, the court may order judgment upon default to be entered for the plaintiff at the time the motion is heard or thereafter, provided that in either event a separate motion for such judgment has been filed. The motions for default and for judgment upon default may be served and filed simultaneously but shall be separate motions."

On April 20, 1992, the trial court rendered a judgment of foreclosure by sale of all the mortgaged properties. The sale was set for October 17, 1992. On October 7, 1992, the defendant Rose Marie Cornaglia filed a motion to open the judgment, pursuant to Practice Book § 326,[5] to extend the sale date of her property so that parcel B might be sold privately to satisfy the debt. The trial court granted the motion on October 13, 1992, and set January 23, 1993, as a new sale date for the properties. On December 15, 1992, the defendant filed a second motion to open that requested the trial court (1) to apply the fair market value of parcel B against the debt of Carl Cornaglia and Lucy Cornaglia, (2) to enter judgment against her for the amount remaining unpaid after parcel B had been sold, and (3) to extend the sale date to allow parcel B to be sold. On January 12, 1993, she filed amended prayers for relief that requested that the trial court order the plaintiff (1) to seek satisfaction of the debt from the properties owned by Carl Cornaglia and Lucy Cornaglia and (2) to assign the debt and mortgage underlying this action to her upon payment by her to the plaintiff of the amount of the judgment. The amended prayer for relief further requested that the sale date be extended to March 13, 1993, so that parcel B could be sold. The trial court granted only the defendant's request to extend the sale date. The new sale date was set for March 20, 1993. This appeal followed.

On January 26, 1993, the defendant filed a motion for articulation, pursuant to Practice Book § 4051,[6] that

[5] Practice Book § 326 provides in pertinent part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court. . . ."

[6] Practice Book § 4051 provides in pertinent part: "Any motion seeking corrections in the transcript or the trial court record which depend on proof

requested the trial court to state the reasons that it denied her claims for relief in her amended prayer for relief. The trial court denied the motion on January 26, 1993. The defendant failed to file a motion for review with this court. See Practice Book § 4054.[7] Since we cannot afford review of the defendant's claims, we affirm the judgment of the trial court.

I

The duty to provide us with a record adequate to afford review rests with the appellant. Practice Book § 4061;[8] *Holmes* v. *Holmes,* 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993); *Gelormino* v. *Blaustein,* 31 Conn. App. 750, 751, 626 A.2d 1325 (1993). The defendant did not fulfill her duty to provide us with an adequate record for review. The trial court rendered an oral decision on

of matters not of record or seeking an articulation or further articulation of the decision of the trial court shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper presentation of questions reserved; or the trial court may approve a stipulation of counsel that such a correction or addition be made, provided the motion or stipulation is presented before the appeal is ready to be assigned for hearing and only by leave of the supreme court or the appellate court thereafter. The action of the trial judge as regards such a correction or addition may be reviewed by the court in which the appeal is pending under Sec. 4054. Nothing herein is intended to affect the existing practice with respect to opening and correcting judgments and the records on which they are based."

[7] Practice Book § 4054 provides in pertinent part: "Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Sec. 4051 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. If the motion depends upon a transcript of evidence or proceedings taken by a court reporter, the procedure set forth in Sec. 4053 shall be followed. . . ."

[8] Practice Book § 4061 provides in pertinent part: "It is the responsibility of the appellant to provide an adequate record for review."

January 12, 1993, after all parties to the action had an opportunity to present evidence and arguments to the court. The trial court did not file a written memorandum of decision and failed to cause its oral decision to be transcribed and signed pursuant to Practice Book § 4059. Further, even if we felt permitted to afford review based on the transcript itself, here it would be unavailing, since the trial court failed to place on the record its reasons for denying the two amended prayers for relief for which the defendant seeks review. The trial court limited itself to stating that a party and the defendant have entered into a bona fide purchase and sale agreement and that the parties have an opportunity to bring this contract to fruition. There was thus a total failure to comply with Practice Book § 4059.[9]

The defendant filed a motion for articulation, pursuant to Practice Book § 4051,[10] that asked the trial court to set forth the grounds for its denial of her requested relief in the motion to open. The trial court denied the motion. The defendant then did nothing to perfect the record. "[S]he could have sought review by this court of the adequacy of the trial court's response pursuant to Practice Book § 4054."[11] *Holmes* v. *Holmes,*

---

[9] Practice Book § 4059 provides: "Except in small claims actions and as provided in Sec. 4060, when rendering judgments in trials to the court and in criminal cases, in ruling upon motions to dismiss under Sec. 814 and motions to suppress under Sec. 820, the court shall, either orally or in writing, state its decision on the issues in the case and, if there are factual issues, the factual basis of its decision. The court shall include in its decision its conclusion as to each claim of law raised by the parties. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court within ten days of the filing of the appeal. If written, the decision shall be stated in a memorandum of decision, which shall be filed with the clerk."

In this case Practice Book § 4059 applies because the proceedings to determine the motion to open constituted a trial to the court which rendered a judgment.

[10] See footnote 6.

[11] See footnote 7.

supra, 321. She elected not to do so.[12] The defendant also had the ability to compel compliance with Practice Book § 4059.[13] "Upon proper application, this court has the power, pursuant to Practice Book § 4183, to compel the trial court to comply with the mandate of this provision."[14] *Holmes* v. *Holmes,* supra, 321–22; *State* v. *Rios,* 30 Conn. App. 712, 718–19, 622 A.2d 618 (1993) (*O'Connell, J.,* concurring).

"[U]nder normal circumstances we will not remand a case to correct a deficiency the appellant should have remedied." (Internal quotation marks omitted.) *J.M. Lynne Co.* v. *Geraghty,* 204 Conn. 361, 376–77, 528 A.2d 786 (1987); *Holmes* v. *Holmes,* supra, 322. "The [defendant] failed to follow the relatively simple rules established to guarantee the presentation to this court of a record appropriate to review." *Holmes* v. *Holmes,* supra. "As an appellate tribunal, either we adhere to the letter of the rules or create judicial anarchy, whereby, on an ad hoc basis, we decide cases, the outcome of which will turn on the mindset of the panel hearing the appeal." Id.; *State* v. *Deptula,* 31 Conn. App. 140, 152, 623 A.2d 525, cert.

---

[12] "Our rules provide a vehicle for a party to create an adequate record for appeal. In the absence of the plaintiff's compliance with our rules, our role is not to throw a life preserver based upon merciful hope. We are a court of appeals, not of refuge." *Holmes* v. *Holmes,* 32 Conn. App. 317, 321 n.6, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993).

[13] See footnote 9.

[14] Practice Book § 4183 provides in pertinent part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate, and, except as otherwise provided in these rules, any motion the purpose of which is to complete, correct or otherwise perfect the trial court record for presentation on appeal shall be made to the court in which the appeal is pending. The court may, on its own motion, modify or vacate any order made by the trial court, or a judge thereof, in relation to the prosecution of the appeal. It may also, for example, on its own motion or upon motion of any party, (1) order a judge to take any action necessary to complete the trial court record for the proper presentation of the appeal . . . ."

granted, 226 Conn. 911, 628 A.2d 984 (1993) (*Heiman, J.,* dissenting). Accordingly, we decline to afford review of the defendant's claims.

## II

The defendant also failed to disclose any defense pursuant to Practice Book § 236.[15] The claims on appeal, in essence, dispute her liability in the foreclosure action. The dissent indicates that she had no defense to assert prior to the bank's pressing its right to collect the debt owed from her. The dissent, however, fails to address the fact that the complaint alleges that the defendant was liable for the debt. Our rules place the burden on defendants to assert all defenses in a timely manner. A failure by the defendant to disclose a defense to liability in a timely manner, after a request pursuant to Practice Book § 236, precludes her from raising it later in the trial court. See *Suffield Bank* v. *Berman,* 25 Conn. App. 369, 373, 594 A.2d 493, cert. denied, 220 Conn. 913, 914, 597 A.2d 339 (1991); D. Caron, Connecticut Foreclosures (2d Ed. 1991 Sup.) § 5.01E. Claims not properly raised before the trial court will not be reviewed on appeal. *Saradjian* v. *Saradjian,* 25 Conn. App. 411, 419, 595 A.2d 890 (1991); *Goold* v. *Goold,* 11 Conn. App. 268, 282, 527 A.2d 696, cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987). Accordingly, we will not review these claims on appeal.

The judgment is affirmed.

In this opinion O'CONNELL, J., concurred.

LAVERY, J., dissenting. Because the facts of this case, established by the record, reveal manifest injustice, I respectfully dissent.

The facts of this case are undisputed. The defendant Rose Marie Cornaglia mortgaged her home to The

---

[15] See footnote 3.

Dime Savings Bank of Wallingford so that her son, Carl, and his wife, Lucy, could buy property in Wallingford known as parcel B. Although Carl and Lucy signed a note promising to pay the bank $150,000, Rose never signed the note. Rose mortgaged her home because the bank wanted more security than the mortgages on parcel B and Carl and Lucy's house at 58 North Branford Road in Wallingford.[1]

After Carl and Lucy failed to repay the note, the bank began foreclosure proceedings against all three pieces of property. Lucy, Carl and Rose were defaulted and the trial court ordered a foreclosure by sale on April 20, 1992.

In early June, the bank filed two judgment liens on parcel B, immediately subsequent in priority to the bank's mortgage. A few days later, on June 12, 1992, Carl and Lucy filed for chapter 11 bankruptcy protection. The automatic bankruptcy stay protected both parcel B and Carl and Lucy's residence from the bank's foreclosure proceeding. The bank continued foreclosure proceedings against Rose's home, while moving in bankruptcy court to lift the stay partially so it could foreclose on parcel B to satisfy its judgment liens. The bank, however, did not request the bankruptcy court to lift the stay as to its first mortgage on parcel B.

Because the bank refused to subrogate Rose or to proceed against the Carl and Lucy's property first, Rose moved to open the judgment in October, 1992, seeking to have the court order the bank to subrogate

---

[1] The complaint states: "As further security for the payment of said note [signed by Carl and Lucy], the Defendant, Rose Marie Cornaglia, and one Basil Cornaglia, mortgaged to the plaintiff by their mortgage deed" her residence at 123 South Main Street in Wallingford. The complaint further states that Basil Cornaglia, Rose's husband, died on April 19, 1988. Rose succeeded to his interest in the residence.

her or proceed against the other property first.[2] The trial court granted only Rose's request to extend the sale date of parcel B, and specifically ordered that the bank was not required to subrogate Rose. Thus, although Rose mortgaged her property to secure another's debt with the knowledge that the borrower's property would be the primary security, the bank was permitted to use parcel B to satisfy its two judgment liens subsequent in time to its first mortgage on the property and take Rose's property to satisfy the mortgage. This appeal resulted.

The facts as alleged in the bank's complaint alone establish, as a matter of law, that Rose was a surety. See *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 350, 579 A.2d 1054 (1990) (appellate review absent a finding limited to determining whether record established status as matter of law); *Stroiney* v. *Crescent Lake Tax District*, 205 Conn. 290, 296, 533 A.2d 208 (1987) (plaintiff's factual allegations constitute judicial admissions that appellate courts can use to review trial court's ruling). Suretyship results where one mortgages property to secure the debt of another. *Cross* v. *Allen*, 141 U.S. 528, 534, 12 S. Ct. 67, 35 L. Ed. 843 (1891); A. Stearns, Law of Suretyship (5th Ed. Elder 1951) § 2.2; E. Spencer, Suretyship (1913) § 9; Restatement of Security (1941) § 82, comment h; 72

---

[2] Rose's prayer for relief sought "(1) That the [bank] be ordered to first seek satisfaction of the debt underlying this action from the property of the defendants Carl and Lucy Cornaglia, before having recourse to the property of the defendant Rose Marie Cornaglia; or, in the alternative

"(2) That the [bank] be ordered to assign the debt and mortgage underlying this action, and the judgment herein, to the defendant Rose Marie Cornaglia upon payment by the said defendant to the [bank] of the amount of the judgment herein, plus interest and costs, including the Committee's reasonable fees and expenses; and

"(3) That the sale date be extended to March 13, 1993 to afford the defendants a reasonable time within which to obtain permission from the Bankruptcy Court to proceed with a private sale of Parcel B, as proposed herein, or to obtain the funds to pay the judgment, as aforesaid."

C.J.S. Principal and Surety (1987) § 36; 74 Am. Jur. 2d Suretyship (1974) § 12; see also *Quinnipiac Brewing Co.* v. *Fitzgibbons,* 73 Conn. 191, 197, 47 A. 128 (1900) (husband who mortgaged his own property to secure loan to wife is surety); *Ayres* v. *Husted,* 15 Conn. 504, 517 (1843) (wife who mortgaged her own property to secure husband's debt is surety). In this case, Rose mortgaged her home to secure Carl and Lucy's debt. Rose neither signed the note nor received any money from the bank. By her pledge Rose became a surety as a matter of law.

As a surety, Rose was entitled to be subrogated to all of the securities held by the bank against Carl and Lucy upon payment of the debt.[3] See *Spitz* v. *Century Indemnity Co.,* 129 Conn. 396, 398, 28 A.2d 874 (1942); Restatement, Security (1941) § 141; Restatement, Suretyship (Council Draft No. 2 1993) §§ 23 and 24; A. Stearns, supra, § 11.1; L. Simpson, Suretyship (1950) § 47. Once subrogated, Rose also had the right to the same priority accorded the debt when held by the bank. See *American Surety Co. of New York* v. *Bethlehem Bank,* 314 U.S. 314, 317, 62 S. Ct. 226, 86 L. Ed. 241 (1941); Restatement, Security, supra, § 141, comment a; Restatement, Suretyship, supra, § 25; A. Stearns, supra, § 11.1; L. Simpson, supra, § 47.

Rose's status as a surety also entitled her to insist that the bank collect first from Carl and Lucy's property before resorting to her home provided that (1) failure to do so threatened hardship to Rose, (2) Rose paid off the debt and (3) Carl and Lucy's property was available. See Restatement, Security, supra, § 131; E. Spencer, Suretyship (1913) § 133; 72 C.J.S., Principal and Surety (1987) § 219 (b); 74 Am. Jur. 2d, Sur-

---

[3] Rose offered to pay the full judgment rendered against her, plus interest and costs. See footnote 2.

etyship (1974) § 203. The first two conditions were met because Rose risked losing her home and offered to pay the judgment in its entirety, but the bank itself ensured that Carl and Lucy's property was unavailable. By seeking relief in bankruptcy court only as to its two judgment liens, and ignoring its own prior mortgage on the property, the bank could collect its judgment liens from parcel B and profess to the trial court that parcel B was not amenable to foreclosure. The bank's own tactical maneuvering was the sole reason it could not foreclose on Carl and Lucy's property.

Foreclosure is an equitable proceeding in which the goal is complete justice. *Virginia Corp.* v. *Galanis,* 223 Conn. 436, 448, 613 A.2d 274 (1992). "One who seeks equity must also do equity and expect that equity will be done for all." *Gelinas* v. *West Hartford,* 225 Conn. 575, 587, 626 A.2d 259 (1993). Although Rose had a right to subrogation, the bank refused to subrogate her. Thus, the bank sought equity without doing equity.

Moreover, those that come into equity must come with clean hands. *Poliveri* v. *Peatt,* 29 Conn. App. 191, 202, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 166 (1992). By preventing itself from foreclosing on parcel B, the bank thwarted Rose's equitable right to have the bank seek satisfaction of the debt from Carl's property before resorting to her home. By violating an equitable principle, the bank comes to equity with unclean hands.

Thus, we are presented with the following: the bank seeks the equitable relief of foreclosure but refuses to do equity, as it must, and comes to equity with unclean hands, as it must not. Rose is forced to choose either to become a surety for the bank's judgment liens and pay off the mortgage debt *and* the judgment liens or to lose her home. The trial court denied Rose her equitable rights as a surety and granted an undeserving

party equitable relief but refused to explain its reasoning. Finally, the majority permits justice to be strangled by procedure even though the bank's complaint recites the basis of suretyship.

It is clear from the record as it now stands that Rose was a surety and, therefore, deserved certain rights. It is equally clear that she was deprived of the protection of those rights by the trial court in favor of the bank which refused to do equity or to permit equity to be done. This court has the authority to look to the plaintiff's factual allegations that constitute judicial admissions to review the trial court's decisions. *Stroiney* v. *Crescent Lake Tax District,* supra. I would, therefore, reverse the judgment and remand the case for a new hearing.

Alternatively, I would remand for further articulation because the record lacks an explanation for the trial court's actions. Although we do not remand for articulation "under normal circumstances"; *J.M. Lynne Co.* v. *Geraghty,* 204 Conn. 361, 367–77, 528 A.2d 786 (1987); our appellate courts do remand for articulation, even where the appellant has failed to satisfy our rules regarding perfection of the record. See, e.g., *State* v. *Patterson,* 227 Conn. 448, 455, 629 A.2d 1133 (1993); *Connecticut Bank & Trust Co.* v. *Winters,* 225 Conn. 146, 163, 622 A.2d 536 (1993); *Lauer* v. *Zoning Commission,* 220 Conn. 455, 470, 600 A.2d 310 (1991); *Associated Catalogue Merchandise, Inc.* v. *Chagnon,* 210 Conn. 734, 751, 557 A.2d 525 (1989); *State* v. *Garrison,* 199 Conn. 383, 388, 507 A.2d 467 (1986); *State* v. *Lafferty,* 191 Conn. 73, 76, 463 A.2d 238 (1983); *Grunschlag* v. *Ethel Walker School,* 189 Conn. 316, 321, 455 A.2d 1332 (1983); *Kaplan* v. *Kaplan,* 185 Conn. 42, 46, 440 A.2d 252 (1981); *State* v. *Ostroski,* 184 Conn. 455, 460–61, 440 A.2d 166 (1981); *Powers* v. *Powers,* 183 Conn. 124, 125, 438 A.2d 845 (1981); *North Park*

*Mortgage Services, Inc.* v. *Pinette,* 27 Conn. App. 628, 633–34, 608 A.2d 714 (1992).

By refusing to remand and allowing Rose's appeal to die a procedural death, the majority breaks with the precedent established by our Supreme Court in *Connecticut Bank & Trust Co.* v. *Winters,* supra. In that case, our Supreme Court reviewed a trial court's ruling in a foreclosure action in which the appellant failed to perfect the record as required by the rules of practice. The court exercised its "authority to order a remand because this case required the trial court . . . to exercise its equitable powers to achieve substantial justice among the parties, and the present record provides an insufficient basis upon which to review that exercise of equitable discretion." Id. We should follow the example of our Supreme Court and remand for articulation where, as here, it is our duty to review the equitable discretion of the trial court.

The majority complains that the only alternative to this unduly harsh result is anarchy. Our precedents, however, guide this court in deciding when to remand for articulation. Although remand is unavailable in "normal circumstances," remand is appropriate where necessary for the interests of justice; *Sadloski* v. *Manchester,* 228 Conn. 79, 85, 634 A.2d 888 (1993); where required for our review of equitable discretion; *Connecticut Bank & Trust Co.* v. *Winters,* supra; where serious civil penalties hang in the balance; *Carothers* v. *Capozziello,* 215 Conn. 82, 114, 574 A.2d 1268 (1990); and where the appellant had attempted in good faith to perfect the record. *North Park Mortgage Services, Inc.* v. *Pinette,* supra. In this case, complete justice, the goal of all equitable proceedings, requires that we remand for articulation.

Finally, the spirit of the rules of appellate procedure dictates that we remand for articulation. Practice Book

§ 4187 requires that the rules be interpreted liberally where failure to do so would result in injustice. Section 4187 also states explicitly that the rules are designed to facilitate business and advance justice. Although the majority's solution certainly facilitates business, it certainly does not advance justice.

"[T]his court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . ." (Internal quotation marks omitted.) *State* v. *Hall*, 213 Conn. 579, 593, 569 A.2d 534 (1990). It is clear that a remand for articulation is necessary, within our power, envisioned and intended by our rules of appellate procedure, supported by our precedent and imperative to achieve justice in this case. I would, therefore, reverse and remand for a new hearing in light of the record establishing Rose's surety status and her right to the relief requested, or in the alternative, remand this case for articulation.[4]

---

[4] The majority asserts that Rose denies liability for the debt in this appeal. This statement, however, is unsupported by the record. Rose necessarily admits her liability by asserting her status as a surety. By seeking to assert her equitable rights pertaining to sureties, she admits that, as a surety, she is liable for the mortgage debt.

Rose disclosed no defense to the foreclosure action because she had no defense to her liability for the mortgage debt. Further, Rose acted properly by not appealing the judgment of foreclosure by sale because she had no basis for appeal. Her equitable rights were first infringed when the bank sought selective relief from the stay and refused to subrogate her to the mortgage.