IN RE BRUCE R. ET AL.*
(12662)

DUPONT, C. J., HEIMAN and FREEDMAN, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 13—decision released April 26, 1994

*Sean Orion Lebas,* for the appellant (respondent).

*Edward R. Giacci,* for the appellee (petitioner).

*Mary B. Androski,* for the minor children.

FREEDMAN, J. The respondent mother appeals from the order of the trial court terminating the parental rights of the petitioner father. On appeal, the respondent claims that the trial court improperly (1) utilized the termination procedure provided for in General Statutes § 45a-715 et seq. to terminate the parental rights of the petitioner, (2) found that termination of the peti-

tioner's parental rights was in the best interests of the children, (3) refused to order the petitioner to file a financial affidavit pursuant to Practice Book § 463, and (4) sustained the petitioner's objection to the respondent's counterclaim.

The following facts are not in dispute. During the petitioner's marriage to the respondent, they had two children issue of the marriage, a son born June 18, 1980, and a daughter, born December 2, 1987. On March 25, 1988, their marriage was dissolved by the Superior Court. In the decree of dissolution, the respondent was granted custody of the two minor children and the petitioner was granted liberal rights of visitation. The decree further ordered the petitioner to pay $75 per week for the support of each minor child, maintain medical and life insurance for their benefit, and to pay one-half of all their unreimbursed medical expenses. After the dissolution, problems arose between the petitioner and respondent that affected the petitioner's rights of visitation.

On May 14, 1991, the petitioner filed petitions in the Court of Probate for the district of Derby seeking to terminate his parental rights with respect to both children. Both petitions alleged the following reasons for seeking such termination of parental rights: "Since the date of dissolution, the children have been used as pawns. I have been denied visitation when requested. Allegations have been raised that I am not a fit father which led the Superior Court to enter supervised visitation. Since that order, additional problems with visitation have arisen which are now affecting the well-being of the children. In mid-winter 1990/1991, Respondent, mother of the minor child, suggested that in the best interest of the children, that I consent to termination of my parental rights. After careful consideration and thought and after reviewing the inability of Respondent and me to discuss any difficulties that

we have, including important matters in the [children's] life, it is clear that I agree with her contention that my parental rights be terminated. The [children's] well-being is affected adversely by the difficulties between Respondent and me which I do not believe can be cured through counseling. It is further clear that the ultimate best interest of the children will be served by the termination of my parental rights to allow Respondent to live her life without any concern for me or of me and thereby ease the pressure on the [children] emotionally." Along with the petitions seeking to terminate parental rights, the petitioner executed and filed the consent form required by General Statutes § 45a-715 (d).[1] The Court of Probate appointed an attorney for the children and ordered the department of children and youth services (DCYS)[2] to make an investigation and subsequent written report regarding the proposed termination. DCYS contracted with a private agency, Community Children and Family Services, to conduct the investigation and that private agency thereafter submitted a written report to the Court of Probate. The report was based on the information gathered from interviews with the petitioner, the respondent, and both children. The report recommended that the petitions for termination of parental rights be denied on the ground that "it does not seem to bear that inability to get along with his ex-wife relieves [the petitioner] from responsibility for providing for his children."

On motion of the respondent, the petitions for termination of parental rights were ordered transferred from the Court of Probate to the Superior Court, Juvenile

[1] General Statutes § 45a-715 (d) provides in pertinent part: "[E]ach consenting parent shall acknowledge such consent on a form promulgated by the office of the chief court administrator evidencing to the satisfaction of the court that the parent has voluntarily and knowingly consented to the termination of his parental rights. . . ."

[2] The department of children and youth services has since been renamed the department of children and families. Public Acts 1993, No. 93-91, § 1.

Matters, pursuant to General Statutes § 45a-715 (g). On July 7, 1992, the attorney for the children requested that the court issue an order to obtain updated evaluations of the petitioner, the respondent, and the minor children. By agreement of all counsel, Ralph S. Welsh was appointed to conduct these evaluations. The evaluations were conducted on December 8 and 29, 1992, and written reports were submitted to the trial court. The trial court conducted a hearing regarding the termination of the petitioner's parental rights on May 21 and 24, 1993. The petitioner, the respondent, Welsh, and the son's therapist, Annette Bonomo, testified at the hearing. The trial court granted the petitions to terminate the petitioner's parental rights on May 24, 1993. This appeal followed.

I

The respondent first claims that the trial court improperly utilized the termination procedure provided in § 45a-715 et seq. to terminate the parental rights of the petitioner. The thrust of the respondent's argument is that the statute was "not conceived" to allow a parent to seek and receive a termination of his or her own parental rights "absent pending adoption [or] state custodial placement." We do not agree.[3]

First, it is clear from the language of § 45a-715 that a parent may be the one to initiate a petition seeking termination of his or her own parental rights. Section 45a-715 (a) provides that "[a]ny of the following persons may petition the court of probate to terminate parental rights of all persons who may have parental

---

[3] The respondent also argues that the statute was "not conceived" to allow a parent to terminate his or her own parental rights "merely . . . when the parent . . . no longer wished to pay support for his [or her] children." As will be seen from the balance of this opinion we agree with the respondent in this regard.

rights regarding any minor child . . . (1) [e]ither or both parents . . . ." Second, "the termination of parental rights is part of the adoption process [and] it is clear that adoption cannot proceed unless the parents' rights are terminated in the first instance. The converse is not true. The parents' rights can be terminated without an ensuing adoption. . . . Although petitions for termination are presumably seldom brought unless prospective adoptive parents are available . . . it is clear that there are circumstances wherein termination of a parent's rights is not followed by adoption." (Citation omitted.) *In re Theresa S.*, 196 Conn. 18, 30–31, 491 A.2d 355 (1985).

We conclude that under the present statutory scheme a parent may petition for the termination of his or her own parental rights and that a petition for the termination of parental rights is not dependent on a pending adoption or state custodial placement.

## II

The respondent next claims that the trial court improperly found that termination of the petitioner's parental rights was in the best interests of the children. We agree. General Statutes § 45a-717 (f) provides in pertinent part that "[a]t the adjourned hearing . . . the court may approve the petition terminating the parental rights . . . if it finds, upon clear and convincing evidence that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child . . . ."

General Statutes § 45a-717 (e) (1) provides: "The court may, and *in any contested case shall*, request the commissioner of children and youth services or any child-placing agency licensed by the commissioner to make an investigation and written report to it, within

ninety days from the receipt of such request. The report *shall indicate* the physical, mental and emotional status of the child and *shall contain* such facts as may be relevant to determine whether the proposed termination of parental rights will be for the welfare of the child, including the physical, mental, social and *financial condition* of the natural parents, and any other factors which the commissioner or such agency finds relevant to determine whether the proposed termination will be for the welfare of the child." (Emphasis added.) Clearly this was a contested case, in that the mother of the children sought to prevent the father from terminating his parental rights.[4] While it is true that the petitioner consented to the termination of his parental rights, the respondent filed an answer denying the allegations of the petitions and requested that the petitions be denied. A full hearing was held in the trial court at which the respondent vigorously opposed the granting of the petitions. Because this was a contested case, the Court of Probate properly requested DCYS to make an investigation and issue a written report.

While § 45a-717 (h) is specific as to what the court must consider in determining whether to terminate the parental rights of a nonconsenting parent,[5] it does not

[4] The respondent claims that the trial court failed to follow the mandatory provisions in General Statutes § 45-717 (h) which apply in a case where the parent, whose rights are being terminated, does not consent. We note that even though we conclude that this is a contested case, since the petitioner has not only consented to the termination of his parental rights but was in fact the movant, the provisions in the statute which set forth the framework for termination of parental rights where the parent does not consent do not apply. See footnote 5.

[5] General Statutes § 45-717 (h) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order

explicitly set forth such considerations in the case of a consenting parent. We are guided, however, by the portion of the statute that establishes the areas that must be investigated and reported to the court in a contested case. Section 45a-717 (e) (1) provides, inter alia, that the report "shall contain such facts as may be relevant to determine whether the proposed termination of parental rights will be for the welfare of the child, including the physical, mental, social and *financial condition of the natural parents* . . . ." (Emphasis added.)

The language of § 45a-717 (e) (1) is not clear and may be subject to different interpretations. One interpretation is that the determination of whether the financial condition of the parents is relevant is left to the discretion of DCYS or its representative when making the investigation and subsequent report. Another interpretation is that the statute mandates that the report contain information regarding the financial condition of the parents, the relevancy of which is to be determined by the trial court. When a statute is subject to differing interpretations, we will construe the

entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

statute so as to obtain a result that is neither incongruous nor irrational. See *Ancona* v. *Norwalk,* 217 Conn. 50, 56, 584 A.2d 454 (1991), and cases cited therein.

Here, the responsibility rests with the trial court to determine whether termination of parental rights is in the best interests of the children. Therefore, the question of what is relevant to that determination "is a judicial function and can be accomplished only by one clothed with judicial authority." *Valante* v. *Valante,* 180 Conn. 528, 532–33, 429 A.2d 964 (1980). Because the determination of the relevancy of the financial condition of the parents is a judicial function, it would be "incongruous" and "irrational" to interpret the statute in such a manner as to allow DCYS or its representative to make that determination.

Additionally, "[b]oth state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. *Turner* v. *Turner,* 219 Conn. 703, 713–20, 595 A.2d 297 (1991); 42 U.S.C. § 651 et seq. (Part D of Title IV of the Social Security Act). Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. See generally A. Houseman, 'Poverty Law Developments and Options for the 1990s,' 24 Clearinghouse Review 2, 5–7 (1990); P. Roberts, 'Child Support and Beyond: Mapping a Future for America's Low-Income Children,' 22 Clearinghouse Review 594 (1988)." *Mulholland* v. *Mulholland,* 31 Conn. App. 214, 224, 624 A.2d 379, cert. granted, 227 Conn. 905, 632 A.2d 693 (1993).

We conclude, therefore, that the statute requires the trial court to consider, as one of the elements necessary to make the determination of what is in the best

interests of the children, the financial condition of the natural parents. We do not hold, nor do we imply, that the financial condition of the parents may alone determine the best interests of a child. We do hold that the trial court must be adequately apprised of such financial condition, must give it due consideration, and must accord it as much weight in its decision as the trial court in its discretion deems appropriate in light of all of the other facts and circumstances surrounding the proposed termination of parental rights.

While the respondent urges us to conclude that there was insufficient evidence to find that the termination of the petitioner's parental rights was in the best interests of the children, she does not specifically refer to the statutory provisions that we conclude require examination of the financial condition of the parents in a contested case. She does, however, refer to the strong public policy concern regarding the financial support of children and the fact that the trial court did not consider the financial condition of either parent in making its determination. To the extent that the respondent does not raise the issue of the statutory mandate that the trial court consider the financial condition of the natural parents, we review this issue under the plain error doctrine. Practice Book § 4185; see *Colby* v. *Colby,* 33 Conn. App. 417, 421, 635 A.2d 1241 (1994).[6]

Our review of the trial court file, the exhibits before the trial court, and the transcript of the trial court hearing reveals that the trial court did not have sufficient information before it to consider the financial condition of the natural parents adequately. The only reference in the trial court file or the exhibits to such financial condition was that contained in the report by

[6] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

Community Children and Family Services. There, the only references even touching on the "financial condition of the natural parents" were the following: "[the respondent's] opinion concerning [termination of parental rights] is that [the petitioner] is only petitioning the court in the hope that he will gain financial relief from his obligations as their father. . . . The basis for her allegations concerning his wish to obtain relief from financial obligation is the substantial amount owed to her in child support payments which are in arrears and the fact that he has the ability to pay based upon his current income. . . . [The respondent] states that she is not financially able to care for her children without support from their father. She feels that children who only have one parent should not have that parent taken away to work long hours when another parent has abdicated all responsibility for them. She currently holds a part time position of driving a school bus which enables her to spend a good deal of time with them. She feels she will have few opportunities for meaningful employment because of her limited education and job skills."

During the hearing before the trial court, there were two brief colloquies with the respondent that touched on her financial condition. The first was an inquiry by her attorney that produced a statement by the respondent that the children needed the financial support of the petitioner. The second was an inquiry by the petitioner's attorney, asking the respondent who was residing in the family home, and what contribution, if any, others made to the expenses of the family home. No information was presented to the trial court regarding the financial condition of the petitioner.

In addition, before the hearing commenced, the respondent requested an exchange of financial affidavits and the trial court denied the request. Without any

meaningful inquiry into the financial condition of the natural parents, we conclude that the trial court was unable to determine properly what was in the best interests of the children.

## III

The respondent next claims that the trial court improperly refused to order the petitioner to file a financial affidavit pursuant to Practice Book § 463. Even though we reverse the decision of the trial court and remand the matter for a new hearing, we address this claim because it is likely to arise again at the new hearing.

Practice Book § 463 provides in pertinent part that "[a]t the time a motion concerning alimony, support or custody is filed, or at the time a dissolution of marriage, legal separation or annulment action is claimed for a hearing, the moving party shall file a sworn statement . . . of current income, expenses, assets and liabilities, and pertinent records of employment, gross earnings, gross wages and all other income. . . ." The respondent argues that because the result of the termination of the petitioner's parental rights will result in a termination of the child support payments, this action comes under the ambit of Practice Book § 463. We do not agree.

A petition for the termination of parental rights is neither a motion concerning alimony, support or custody, nor is it an action for dissolution of marriage, legal separation or annulment. We conclude, therefore, that Practice Book § 463 does not apply to a petition for termination of parental rights.

## IV

The respondent's final claim is that the trial court improperly sustained the petitioner's objection to the respondent's counterclaim. The respondent's counter-

claim consisted of a claim for attorney's fees and a request that the trial court suspend the petitioner's "rights of custody and visitation of the minor children."

It is well settled that the duty to provide us with a record adequate to afford review rests with the appellant. Practice Book § 4061;[7] *Dime Savings Bank of Wallingford* v. *Cornaglia,* 33 Conn. App. 549, 553, 636 A.2d 1370 (1993); *Holmes* v. *Holmes,* 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993); *Gelormino* v. *Blaustein,* 31 Conn. App. 750, 751, 626 A.2d 1325 (1993). Here, the respondent did not fulfill her duty to provide us with an adequate record for review. At the commencement of the hearing, the petitioner objected to the respondent's counterclaim and the trial court sustained the objection. The trial court did not state the basis on which it sustained the objection and the respondent made no effort to obtain an articulation pursuant to our rules of practice.

Because the record is inadequate and because the respondent has failed to take the proper steps to present us with an adequate record, we decline to review this claim. *Dime Savings Bank of Wallingford* v. *Cornaglia,* supra, 33 Conn. App. 553–55; *Holmes* v. *Holmes,* supra, 32 Conn. App. 323.

The judgment terminating the petitioner's parental rights is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[7] Practice Book § 4061 provides in pertinent part: "It is the responsibility of the appellant to provide an adequate record for review."