## JOANNE MILLS *v.* GEORGE THERIAULT

SUPERIOR COURT    GEOGRAPHICAL AREA 17 AT    FILE NO. FA17-645
BRISTOL

Memorandum filed April 29, 1985

*James R. Rotchford, Sr.,* and *Jeffrey C. Pingpank,* for the plaintiff.

*Theodore J. Wurz,* for the defendant.

MALONEY, J. The plaintiff in this case is the guardian of Daniel Theriault, appointed pursuant to the provisions of chapter 777 of the General Statutes. The

defendant is the natural father of Daniel. The plaintiff brings this action under General Statutes § 46b-215 to recover amounts expended for the child's support.

On the basis of the stipulation of the parties, testimony and other evidence introduced at the hearing, the court finds the following facts. Daniel was born on February 26, 1967. The marriage between the defendant and Daniel's mother was dissolved in 1979, and the court awarded custody of him to the defendant. There has been no modification of that custody order, although Daniel has from time to time resided with his mother during the years since the dissolution. There have also been periods when he has stayed for several months with neither parent. During the period January 1, 1984, to April 8, 1984, Daniel lived in his father's home. He was attending high school and had a part-time job. At his father's insistence, Daniel paid his father $35 per week out of his part-time job earnings.

During the period January to April, 1984, relations between the defendant and his son became increasingly difficult. On April 8, 1984, they quarreled bitterly over the defendant's requirement that Daniel make the $35 per week contributions and over alleged violations of certain household rules. Daniel is physically larger and stronger than the defendant, and at some point during the quarrel the defendant called the police. With at least the tacit consent of the defendant, the police ordered Daniel out of the defendant's house.

On April 10, 1984, the plaintiff and her husband, who had been Daniel's football coach at the high school, invited Daniel to stay with them and he has resided with them ever since that date. The defendant made no effort to determine Daniel's whereabouts and has exerted no control or influence over him since he left the defendant's home. In July and August, 1984, the plaintiff's husband contacted the defendant and

requested financial support for Daniel. He refused. Nevertheless, the plaintiff and her husband continued to allow Daniel to live with them. On October 23, 1984, the plaintiff was duly appointed by the Probate Court to be Daniel's guardian. From April 10, 1984, when Daniel first came to live with the plaintiff, until February 26, 1985, when he reached his majority, the plaintiff and her husband had expended an average of $67 per week for Daniel's maintenance and support. These expenditures have been primarily for Daniel's personal needs, clothing and food, with a relatively small fraction allocated to the extra cost of utilities and to maintenance of the household.

The defendant's main line of resistance to the plaintiff's claim is based on his theory that Daniel was emancipated from the time he ceased to live with the defendant and that this immediately relieved him of all parental obligations. Emancipation of minors in Connecticut derives both from statute and common law. Sections 46b-150 through 46b-150d of the General Statutes establish a procedure by which a minor or his parent or guardian may petition the Superior Court for an order of emancipation. Under § 46b-150d (*l*), the parent of a minor who is emancipated by such court order is relieved of the obligation of support. All parties concede that this statutory procedure was not invoked in the present case. Section 46b-150e provides, however, that the statutory procedure does not affect the common law rules of emancipation. The general rule at common law in this state is that "[a] minor is emancipated if placed in a new relation inconsistent with the former relation as part of his parent's family," and it results from the parent's relinquishment of the right to control the child's circumstances and earnings. *Wood* v. *Wood,* 135 Conn. 280, 284–85, 63 A.2d 586 (1948); *Plainville* v. *Milford,* 119 Conn. 380, 384, 177 A. 138 (1935). Such relinquishment may be express or it may

be implied by the parent's acts or conduct, and it is a question for the trier of the facts to determine. *Wood v. Wood,* supra.

Applying the common law rule to the facts of the present case, the court concludes that Daniel was emancipated by the defendant on and after April 8, 1984. Testimony at the hearing unmistakably established that the normal parent-child relationship had become totally disrupted by that date. There is no question that the defendant called the police to intervene in his dispute with Daniel, and he supported their evicting him. In the months that followed, the defendant made no effort to learn where or how he was living. Such facts added up to a complete relinquishment of control, which is, as indicated above, the principal element in common law emancipation of a child by his parent.

While the court concludes that Daniel was emancipated by the defendant, that change in their relationship is not dispositive of the question of the defendant's obligation to contribute to his son's support. The obligation of a parent to support his child is based not only on principles of common law and social policy; it is also firmly rooted in the Connecticut statutes. General Statutes § 46b-215 (a) provides in pertinent part as follows: "(a) The superior court shall have authority to make and enforce orders for payment of support against any person who neglects or refuses to furnish necessary support to . . . a child under the age of eighteen, according to his or her ability to furnish such support."

There is nothing in that statute to suggest that common law emancipation absolutely relieves a parent of his or her support obligation. Indeed, the trend of the law in the United States appears to be toward a more flexible concept of emancipation and away from the all-or-nothing view that emancipation is a complete severance, for all purposes, of the parent-child relationship.

See Cady, "Emancipation of Minors," 12 Conn. L. Rev. 62 (1979). The enactment of § 46b-150 et seq. bolsters the conclusion that the statutory support obligation is not necessarily impaired by a common law emancipation which a parent has unilaterally decreed. Under those sections of the statute, as indicated above, a parent may petition the court for an order of emancipation and, specifically, for relief from the obligation to support the child. Such a provision would be unnecessary if a parent could obtain the same result without resorting to court action. From the standpoint of society as a whole, of course, the statutory procedure for relief from the parental obligation is preferable to the method which the defendant seeks to employ in the present case. Section 46b-150a provides for investigation by various state agencies, appointment of counsel for the child, and any other safeguards deemed appropriate by the court. It ensures that the interests of all parties, including the state, are considered and protected. In the present case, the defendant contends, in effect, that he can legally shed his financial responsibility by the simple expedient of unilaterally emancipating the child. It is not hard to envision the economic chaos that such a theory could inflict on society if adopted by the court and universally applied. As is demonstrated by the facts in the present case, the child's need for financial support does not necessarily vanish upon emancipation, and someone else or the state may have to foot the bill. For all of the reasons set forth above, the court holds that the emancipation of the child in this case by the defendant does not relieve him of his legal obligations.

The plaintiff brings this action pursuant to § 46b-215 of the General Statutes, which permits a petition to be brought by "the husband or wife, child or any relative or the conservator, guardian or any family relations caseworker or support enforcement officer, town or

state, or any selectmen or the public official charged with the administration of public assistance." The plaintiff was appointed guardian of Daniel on October 23, 1984. Prior to that date, she had no legal obligation to arrange for or to provide care or shelter for Daniel. Although she and her husband acted most generously and with the best motives, they essentially acted as volunteers. Under these circumstances, the court holds that the plaintiff's cause of action as well as her statutory right to petition the court did not accrue until the date she was appointed the child's guardian. Accordingly, the court further holds that the defendant is liable to the plaintiff for the support of Daniel, under § 46b-215, for the period from October 23, 1984, to February 26, 1985, a total of eighteen weeks.

There was some evidence at the hearing with respect to Daniel's earnings and expenditures. He testified that he had bought his own clothes since leaving his father's home and had accumulated savings, as of the date of the hearing, amounting to approximately $350. There was no evidence, however, with respect to the amount of savings he might have accrued prior to the date he attained age eighteen, and the court, therefore, disregards any such savings in calculating the amount due the plaintiff.

Judgment may enter for the plaintiff.