[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue before the court is the determination of arrearages owed by the defendant father. Procedurally, this matter arose after the Department of Social Services filed a Delinquency Notice and Claim form seeking an order for immediate income withholding. The defendant filed a timely objection. Subsequently, the Support Enforcement Division filed a contempt citation.
A judgment dissolving the marriage of the parties was rendered by the court, Covello, J., on April 10, 1987. There is one minor child issue of the marriage, William Frederick Baker II, born July 21, 1981. The court incorporated a brief written agreement of the parties. Custody of the minor child was awarded to the plaintiff mother and the court ordered the defendant to pay $80.00 per week for child support. These orders have never been modified.
It is not disputed that the child, Billy, went to live with the defendant father in October, 1995 and remained until June, 1997, when he returned to his mother's residence. It is also uncontroverted that the defendant paid no monetary child support CT Page 10863 during this period. He also failed to pay child support after Billy returned to his mother's residence. In order to enforce her support order, in September, 1997, the plaintiff mother filed an application for IV-D services with the Department of Social Services. The department's intake worker testified that she interviewed Mrs. Baker and assisted her in preparing an arrearage affidavit claiming a delinquency of $1,200.00 as of September 18, 1997. The department then filed the delinquency notice[1]
leading, after numerous delays, to the present hearing.
The defendant has submitted a detailed computer list of charges and all of his claimed payments and credits. The State of Connecticut claims that the minor child received public assistance from October 1, 1991 through August 1, 1995, which was verified by a statement of assistance, State's Exhibit A. The State agrees with the defendant's records as to his arrearage to the State. After reviewing the exhibits and hearing the parties, the court agrees with this computation and finds that the arrearage to the State of Connecticut is $6,110.00 as of September 8, 1998.
The arrearage to the defendant remains in dispute. The defendant concedes that he made no regular support payments until March, 1998[2]. He raises three defenses: that the child was emancipated from November 2, 1997 until March 15, 1998; that he is entitled to a set-off for unpaid support he claims from the plaintiff; and accord and satisfaction based on a lump sum payment made in March, 1998, which he claims as "full and final settlement" of the arrearage.
 I
The first defense, emancipation of the child, is set forth in the defendant's Answer and Set-off. At the hearing, the defendant did not introduce any evidence or record of any court adjudicating the child to be emancipated. General Statutes § 46b-150. Some evidence was adduced that Billy may have again resided away from home, but none of the elements necessary to establish common law emancipation were proven. Mills v.Theriault, 40 Conn. Sup. 349, 353, 499 A.2d 89 (1985); Martin v.Martin, 8 S.M.D. 157 (1994); Mitchell v. Mitchell, 4 S.M.D. 181, 192-195 (1990); see also Wood v. Wood, 135 Conn. 280, 283,63 A.2d 586 (1948); Plainville v. Milford, 119 Conn. 380, 384,177 A. 138 (1935); State v. Desimone, 1 S.M.D. 79 (1987); State v.Moore, 1 S.M.D. 11 (1987). The court finds that the child is not CT Page 10864 emancipated.
 II
The second defense is posed by way of Set-off and Counterclaim. The court order was never modified as to either custody or support. Therefore, the defendant father was obliged to continue to pay $80.00 per week in support. A child support order can only be modified by the court. Fialko v. Fialko,6 Conn.L.Rptr. 574 (1992); Thomas v. Ah Tau Ah Nee, 8 S.M.D. 135, 138 (1994); Anderson v. McFarlane, 7 S.M.D. 131 (1993) affirmed, Superior Court, Judicial District of Litchfield, doc. no. FA89-0049689 (R. Walsh, J., Oct. 24, 1994); see also Brock v.Cavanaugh, 1 Conn. App. 138, 141, 468 A.2d 1242 (1984); Lownds v.Lownds, 41 Conn. Sup. 100, 105, 551 A.2d 775.
"[Parties] should understand that orders of the court are orders of the court. This is not a `do-it-yourself-kit,' but rather a precise and orderly process of the law. Parties cannot take the law into their own hands and do as they please. They must follow court orders. . . . [W]hen they have a change of circumstances they must call their lawyers or come back to court themselves and do it right. They must understand that, unless the order is modified, it remains an order of the court." Fialko v.Fialko, 6 Conn.L.Rptr. 574 (1992) (Karazin, J.).
Our Appellate Court concurred in the decision of a trial court, which denied a father any credit for direct support where a child lived with him for some two years with the acquiescence of the mother. Goold v. Goold, 11 Conn. App. 268, 527 A.2d 696
(1987). While not establishing an absolute bar to such credits, the court found such credits appropriate only in limited circumstances.
The court suggested three factors to be considered in deciding such a claim: (1) whether a motion for modification was filed; (2) whether the parties expressly provided in their separation agreement for a deduction or credit for a residence period; and (3) whether the custodial parent "has in some manner consented to accept the [payor's] direct support of the child as an alternative method of payment of child support." Id., 275.
It is clear that the defendant failed to meet the criteria of the first two factors. No motion was ever filed to modify either custody or support. Nor did the separation agreement or judgment CT Page 10865 include any provision for abatement of payment of support during any residence with the non-custodial parent.
Only under the third factor does the defendant have a colorable claim. The plaintiff mother concedes that she agreed that Billy could live with his father and that he would not be required to pay cash support during that time. She does not claim any arrearage prior to June 1, 1997. She testified that the defendant provided lodging, food, some clothing and other necessities to Billy in an amount that equaled or exceeded $80.00 per week. Although the order requires the defendant to pay his support to the plaintiff, since Ms. Baker is willing to credit the defendant with the direct, in kind support during the period prior to June 1, 1997, the court will grant this credit. This leaves the period subsequent to June 1, 1997 in dispute.
The defendant testified that at some time after Billy moved to his residence, the plaintiff orally agreed to pay him $30.00 per week for support. The plaintiff acknowledged the conversation, but claims that there was no agreement. Rather, she says, she made an offer to send $30.00 per week, "when she could".
While this court has acceded to the parties' agreement to substitute in kind support for cash payments, this limited credit may not be extended to create a support obligation by the custodial parent[3]. The court simply can not countenance what amounts to an improper attempt to modify a court judgment without judicial sanction. Accordingly, the court finds for the plaintiff and the State as to the Set-Off and Counterclaim.
 III
The final defense posed by the defendant, accord and satisfaction, was not mentioned in the pleadings but asserted at the hearing. The defendant claims that an audit by the Support Enforcement Division at the request of the court resulted in an alleged arrearage of $670.00. The defendant claims that he and the plaintiff agreed to this amount, that he thereafter paid it, and that the check included a restrictive endorsement to the effect that the payment was in full and final settlement of the arrearage.
The plaintiff disputes the claim that she agreed to $670.00 as full payment of the arrearage. The court is not persuaded that either the Support Enforcement Division or the plaintiff agreed CT Page 10866 that a $670.00 payment would fully satisfy the arrearage. The face of the audit document, State's Exhibit D, shows the $670.00 figure is asterisked. The note includes the comment: "audit did not include adjustment of $1,280." Even a cursory glance discloses that the AFDC portion of the audit was computed through August 25, 1995 while the non-AFDC portion ran from September 19, 1997 through May 1, 1998. The period from August 25, 1995 to September 19, 1997 was not included in the audit. The court may infer that this was because that period was covered by the plaintiff's arrearage affidavit.
"To prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim. Peerless Hosiery Co. v. Northern Ins. Co., 108 F. Sup. 52, 55-56 (D.Conn.), affirmed 199 F.2d 957 (2d Cir. 1952). The accord must be a new agreement based on new consideration.Crucible Steel Co. v. Premier Mfg. Co., 94 Conn. 652, 656,110 A. 52 (1920). The proponent must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted. Id.; Gillis v. Gillis,21 Conn. App. 549, 552, 575 A.2d 230, 231-32, cert. denied,215 Conn. 815, 576 A.2d 544 (1990)." Munroe v. Emhart Corporation,46 Conn. App. 37, 699 A.2d 213 (1997). There is no credible evidence that either the State or the plaintiff agreed to waive the arrearage claimed on that affidavit. It follows that there was no accord to compromise the arrearage at $670.00.
The check in question[4], Defendant's Exhibit 7, was actually signed by Nancy M. Baker rather than the defendant. Dated May 12, 1998, it was drawn payable to the order of "State of Conn. IV-D Agency". It includes a notation in red ink on the front stating: "In full payment of arrears as per attached accounting." On the back, also in red ink, was the following restrictive endorsement: "Endorsement of this instrument constitutes a full release for arrearages." There is no subsequent endorsement by either the State of Connecticut or the plaintiff. There is an endorsement by Fleet Bank which reads: "Credit to the account of the within named payee — absence of endorsement guaranteed — Fleet Bank, N.A. — Htfd, Ct Lockbox Dept" followed by several nondescript bank endorsements. CT Page 10867
The court finds that this check was never in the possession of either the State of Connecticut or the plaintiff. Indeed, the defendant concedes that the payment was made to Fleet Bank, as the depository for child support payments[5]. The plaintiff received the payment by separate check from the State with no conditions or restrictive endorsement. The defendant claims, however, that because Fleet Bank is the agent for Department of Social Services, which in turn is an agent for the plaintiff, she is bound by the restrictive endorsement.
The court finds that neither the plaintiff nor the child's independent financial interest are bound by a restrictive endorsement to Fleet Bank. There is no privity between the plaintiff or the child and Fleet Bank. "Title to the check passed to the bank, not the plaintiff" South End Bank Trust Co. v.Nasin, 147 Conn. 215, 219, 58 A.2d 591 (1960). "An endorsement stating a condition to the right of the endorsee to receive payment does not affect the right of the endorsee to enforce the instrument. A person paying the instrument or taking it for value or collection may disregard the condition, and the rights and liabilities of that person are not affected by whether the condition has been fulfilled." General Statutes §42a-3-206(b). Even if by some remote stretch of the agency argument, Fleet Bank's depositing of the check could be interpreted to bind the Department of Social Services to the conditions of the restrictive endorsement, this could not be further extended to the plaintiff, or the child's financial interest. See Koehm v.Kuhn, 41 Conn. Sup. 130, 137, 558 A.2d 1042 (1987), affirmed18 Conn. App. 313, 557 A.2d 933 (1989) ("Under the common law, a check offered as payment in full or in full satisfaction initiates an accord and satisfaction and, if the creditorknowingly cashes such a check or otherwise exercises fulldominion over it, he is deemed to have assented to the offer of accord.) (emphasis added). The plaintiff does not have a choice of depository or of the IV-D agency. She has no ability to instruct the bank or the IV-D agency to search for restrictive endorsements, much less to comply with them. She never had possession, dominion or access to the check containing the restrictive endorsement.
Further, any agency relationship with the Department of Social Services or the Support Enforcement Division is limited to enforcement of support and certain procedural aspects relating to commencement of paternity, support and modification proceedings. It does not extend to an authority to modify, adjust or CT Page 10868 compromise accrued arrearages.
Even if there was such an agreement it would not result in alteration of the arrearage. Parents may not contract away child support rights because children have an independent right to support. Jones v. Jones, 199 Conn. 287, 292, 507 A.2d 88 (1986);Guille v. Guille, 196 Conn. 260, 269, 492 A.2d 175 (1985);O'Connor v. O'Connor, 6 Conn.L.Rptr. 575, 576, 7 CSCR 817 (1992);Pomroy v. Pomroy, Superior Court, Family Support Magistrate Division, Judicial District of Windham at Putnam, doc. no. FA89-0036546 (Hutchinson, F.S.M., Aug. 25, 1994); see also Masters v.Masters, 201 Conn. 50, 65, 513 A.2d 104 (1986); Anderson v.McFarlane, supra, 7 S.M.D. 137.
Nor can the court at this time allow any modification or adjustment of the arrearage because to do so would amount to a retroactive modification which is prohibited by statute and by established common law in Connecticut. 42 U.S.C. § 666(a)(9); P.L. 99-509 § 9103(b); General Statutes § 46b-86(a); Darakv. Darak, 210 Conn. 462, 479, 556 A.2d 145 (1989); Sanchione v.Sanchione, 173 Conn. 397, 406-407, 378 A.2d 522 (1977); Shedrickv. Shedrick, 32 Conn. App. 147, 149, 627 A.2d 1387 (1993); Paddockv. Paddock, 22 Conn. App. 367, 373, 577 A.2d 1087 (1990); Vaccarov. Vaccaro, 2 Conn.L.Rptr. 137 (1990); Finneran v. Finneran, 9 S.M.D. 84, 86 (1995); Cattel v. Cattel, 8 S.M.D. 61, 63,9 CSCR 1046 (1994); Anderson v. McFarlane, 7 S.M.D. 131 (1993) affirmed, Superior Court, Judicial District of Litchfield, doc. no. FA89-0049689 (R. Walsh, J., Oct. 24, 1994); Powell v. Powell, 6 S.M.D. 154, 162, 11 Conn.Fam.L.J. 45 (1992); Brown v. Pfeil, 5 S.M.D. 224, 232 (1991); Mitchell v. Mitchell, 4 S.M.D. 181, 195 (1990). The prohibition has been strictly construed, and applies to both increases and decreases in support obligations. Diamond v.Diamond, 32 Conn. App. 733, 742, 631 A.2d 1157 (1993); Hoffman v.Hoffman, 6 S.M.D. 218, 219 (1992). The defendant may not cause a retroactive modification of support by means of a restrictive endorsement on a payment check. Accordingly, based on the evidence and testimony, and particularly the figures cited by support enforcement officer Maureen Maloney at the hearing, the court finds the arrearage owed by the defendant to the named plaintiff to be $1,680.00 as of September 8, 1998.
 IV
The defendant moved for sanctions (#132.00), alleging that the State was tardy and incomplete in some of its responses to CT Page 10869 interrogatories, production requests, and requests to admit. In accordance with Practice Book §§ 13-6, 13-9, and 25-31, the defendant served interrogatories and requests for production upon the State and the plaintiff. Our rules require responses within thirty days. Practice Book §§ 13-7 and 13-10. Subsequently, requests for admission were filed. Practice Book § 13-22.
The defendant complains that the answers were not filed timely and that some were incomplete. The court finds most of these lapses of no great moment. However, one element of the required disclosure was information relating to the period of time and amount of public assistance paid to the family unit.
Such information is crucial in determining the amount of support assigned by the plaintiff to the State. This information is within the exclusive possession and control of the Department of Social Services. It is commonly reduced to a document called a statement of assistance. The information on such statement would be responsive to disclosure requests of the defendant filed in December, 1997, January, 1998 and May, 1998.
In its response to the May interrogatories, the State admits that some of the information requested would be disclosed on the statement of assistance, yet the answer avers that such statement "has been ordered by the Department of Social Services . . . [t]o date we have not received this document."
Aside from the disclosure requests filed by the defendant, the information would be integral to audits ordered by the court,Matasavage, F.S.M. in February and again in April. This document was not provided timely and apparently was not tendered to the defendant until shortly before the hearing. The court finds the failure to provide the statement of assistance within the time required by the practice rules to be inexcusable and to have prejudiced the defendant by causing him to incur needless expense in pursuing disclosure of the information.
While in this case the shortcomings do not justify the more draconian sanctions sought by the defendant such as default judgment or preclusion of the evidence, the motion for sanctions is granted to the extent that a portion of the defendant's costs in filing the motion for sanctions should be paid by the State. Practice Book § 13-14(b)(2).
The court finds it appropriate to partially mitigate this CT Page 10870 sanction against the State because of the defendant's own failure to submit a financial affidavit at or before this hearing as required by our rules. Practice Book § 25-30(a). The court orders net costs of $75.00 payable by the Department of Social Services to the defendant. In view of the arrearage owed to the State, this court orders payment by means of a credit against the arrearage, reducing the balance to $6,035.00.
 V
The parties agreed on a $16.00 per week payment on the arrearages, which complies with the child support guidelines. Of this figure, the court will allocate $5.00 per month to the State's arrearage ($6,035.00 as of September 8, 1998) with the balance to the plaintiff's arrearage ($1,680.00 as of September 8, 1998); provided that if the child returns to public assistance or when the plaintiff is paid in full, the full $16.00 order will be applied to the State's arrearage. Regs. of Conn. State Agencies, § 46b-215a-4(b). Billy reaches majority on July 21, 1999. The current support order will then terminate. Accordingly, on that date, the arrearage payment shall increase to $48.00 per week as provided in the guidelines. Regs. of Conn. State Agencies, § 46b-215a-4(c)(2)(B).
As to the contempt citation, the defendant is ordered to comply with the periodic order of $80.00 per week plus $16.00 on the arrearages, making a total effective order of $96.00 per week ($48.00 per week after July 21, 1999) on a timely basis. He is ordered to make all payments through the IV-D system — no further direct or in kind payments shall be credited, nor shall the case be closed or removed from the IV-D system until all current and arrearage obligations are satisfied. The contempt citation is continued to Friday, October 23, 1998 to monitor compliance. The defendant is ordered to appear in court on that date. However, the Support Enforcement Division is authorized in their discretion, to excuse the parties and counsel in the event of full and timely complance and no other business to be heard by the court.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate