ALAN E. SILVER *v.* STATEWIDE GRIEVANCE
COMMITTEE
(15012)

Foti, Landau and Schaller, Js.

Argued March 18—officially released July 16, 1996

*Maureen A. Horgan*, assistant bar counsel, for the appellant (defendant).

*William F. Gallagher*, with whom, on the brief, was *Barbara L. Cox*, for the appellee (plaintiff).

SCHALLER, J. The defendant statewide grievance committee appeals from the judgments of the trial court sustaining two appeals by the plaintiff Alan Silver and vacating a reprimand issued by the defendant to the plaintiff in each case. The defendant claims that the trial court improperly (1) sustained the plaintiff's appeals without articulating findings pursuant to Practice Book § 27N (f) that substantial rights of the plaintiff had been prejudiced, (2) determined that the plaintiff had no ethical duty to notify his clients' no-fault insurance companies of his receipt of settlement proceeds on behalf of his clients or to safeguard the insurance companies' rights to the proceeds and (3) determined that the plaintiff was precluded by rule 1.6 of the Rules of Professional Conduct from notifying the insurance companies

of the receipt of the settlement proceeds. We affirm the judgments of the trial court.

The following facts are undisputed. In the first case, the plaintiff represented Samuel Jones on a personal injury claim arising out of a motor vehicle accident. Safeco Insurance Company (Safeco) provided Jones with $5000 in basic reparations benefits in relation to the accident. Safeco advised the plaintiff that it expected to be reimbursed for the benefits from the proceeds of any recovery made by Jones. The plaintiff later settled Jones' claims and received $85,000 in settlement proceeds on behalf of Jones.

The plaintiff advised Jones that Jones had a legal responsibility to reimburse Safeco, but Jones insisted that the plaintiff distribute to him the full amount of the settlement proceeds. The plaintiff then distributed the full amount of the settlement proceeds to Jones without notifying Safeco of the settlement. Safeco learned of the settlement approximately two years after the plaintiff had disbursed the proceeds to Jones. Safeco then demanded reimbursement of the benefits. When the plaintiff asserted that he had no liability for the reimbursement, Safeco complained in writing to the defendant.

On March 2, 1992, the local grievance panel for the New Haven Judicial District (local panel) found that there was insufficient evidence to support a finding of probable cause that the plaintiff was guilty of misconduct and forwarded the file to the defendant with the recommendation that the complaint be dismissed. On June 18, 1992, the defendant reversed the local panel and referred the matter to a reviewing committee. On December 27, 1993, the reviewing committee issued a proposed decision[1] recommending that the plaintiff be

---

[1] The proposed decision provided as follows: "It is our conclusion that upon receipt by the [plaintiff] of the settlement funds on behalf of his client, the funds should be considered to be in the hands of the insurance company's

reprimanded for violating rule 1.15 (b) of the Rules of Professional Conduct. On January 20, 1994, the defendant adopted the proposed decision of the reviewing committee and reprimanded the plaintiff.

In the second case, the plaintiff represented Marcy La Banca on a personal injury claim arising out of a motor vehicle accident. United Services Automobile Association Casualty Insurance Company (USAA) provided La Banca with $5000 in basic reparations benefits in relation to the accident. USAA notified the plaintiff that it was entitled to reimbursement of the benefits if La Banca's case was settled. The plaintiff settled La Banca's claim arising from the accident for $15,000. The plaintiff distributed the full amount of the settlement proceeds to La Banca without notifying USAA. After USAA learned of the settlement, it demanded reimbursement. The plaintiff asserted that he was not liable for such a reimbursement. On January 28, 1993, USAA, informed the defendant of the situation.[2]

On May 4, 1993, the local panel again found that there was insufficient evidence to support a finding of probable cause and recommended that the complaint be

---

insured and, thus, subject to the insurance company's lien. Furthermore, we conclude that the [plaintiff] had a continuing obligation to protect the interests of the insurance company pursuant to the Rules of Professional Conduct even if he may not be civilly liable for failing to protect and honor the lien. We conclude that the [plaintiff] had an ethical obligation to hold the funds until the dispute over them between the insurance company and the insured was resolved, even if the insurance company could not, under the statutory scheme, prevail on a civil action against the attorney to recover the funds in question.

"We find by clear and convincing evidence that the [plaintiff] failed to timely notify Safeco of his receipt of the settlement funds and safeguard those funds until the right to them was appropriately resolved, in violation of rule 1.15 (b) of the Rules of Professional Conduct. It is therefore, our recommendation that the [plaintiff] be reprimanded by the Statewide Grievance Committee."

[2] The record reveals that USAA sent a letter describing the situation to the Connecticut Bar Association, which forwarded the letter to the defendant.

dismissed. On August 19, 1993, however, the defendant reversed the local panel and referred the matter to a reviewing committee. On July 6, 1994, the reviewing committee incorporated by reference its proposed decision[3] in the Jones case and again recommended that the plaintiff be reprimanded. On August 18, 1994, the defendant adopted the proposed decision of the reviewing committee and reprimanded the plaintiff.

The plaintiff appealed both of the defendant's decisions to the trial court, which "held that Safeco [and USAA] did not have 'interest[s]' under rule 1.15 (b) which entitled [them] to notice from [the plaintiff] of his receipt of the settlement proceeds" and "that Safeco [and USAA were] not 'entitled to receive' reimbursement of its no-fault payments from the settlement proceeds in [the plaintiff's] hands. Ergo, [the plaintiff] was not obligated, under the rule, to pay any portion of the settlement proceeds to Safeco [and USAA]."

I

The defendant first claims that the trial court improperly failed to articulate findings that substantial rights of the plaintiff had been prejudiced by the decisions to reprimand the plaintiff. The defendant argues that, pursuant to Practice Book § 27N (f),[4] only upon such

---

[3] See footnote 1.

[4] Practice Book § 27N (f) provides: "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the statewide grievance committee or take such other action as may be necessary. For purposes of further appeal, the action taken by the superior court hereunder is a final judgment."

a finding may the trial court reverse the decision of the defendant.

The plaintiff brought his appeal of the defendant's reprimand pursuant to § 27N. While the trial court's memorandum of decision does not specifically cite § 27N, "[i]t is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly. . . . Rather, we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly, including considering the applicable legal principles. . . . The general rule that a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty." (Citations omitted; internal quotation marks omitted.) *Rosenblit* v. *Danaher*, 206 Conn. 125, 134, 537 A.2d 145 (1988); see also *State* v. *Thompson*, 197 Conn. 67, 81, 495 A.2d 1054 (1985); *Bank of Boston Connecticut* v. *Avon Meadow Associates*, 40 Conn. App. 536, 543, 6712 A.2d 1310 (1996).

Where an appellant claims that a trial court failed to make a necessary ruling, "[i]t is the responsibility of the appellant to provide an adequate record for review." Practice Book § 4061; *Dime Savings Bank of Wallingford* v. *Cornaglia*, 33 Conn. App. 549, 553 n.8, 636 A.2d 1370, cert. granted, 229 Conn. 907, 640 A.2d 120 (1994), appeal withdrawn, October 17, 1994. The defendant argues that it fulfilled its responsibility by filing a motion for articulation with the trial court requesting the court to articulate its decision as to "what, if any, substantial rights of the plaintiff-appellee the court found to have been prejudiced, pursuant to Practice Book § 27N (f)." The trial court denied the motion. The defendant then did nothing further to perfect the record. The defendant, however, " 'could have

sought review by this court of the adequacy of the trial court's response pursuant to Practice Book § 4054.' "[5] Id., 554, quoting *Holmes* v. *Holmes*, 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993). Because of the defendant's failure to follow the rules established to guarantee the presentation of an adequate record for review, we assume that the trial court acted properly.

## II

The defendant claims next that the trial court improperly determined that the plaintiff did not have an ethical duty to notify the insurance companies of the receipt of the settlement proceeds to safeguard the proceeds claimed by the insurance companies. The defendant argues that pursuant to General Statutes (Rev. to 1993) § 38a-369 (b)[6] the insurance companies each had an interest in the respective settlement proceeds when the plaintiff received them and, therefore, the defendant was required to safeguard their interests pursuant to rule 1.15 (b). We disagree.

The review of decisions of the grievance committee is limited to the standard set forth in Practice Book § 27N (f).[7] " '[I]n reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing "the record to determine if the facts as found are supported

---

[5] Practice Book § 4054 provides in pertinent part: "Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Sec. 4051 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. If the motion depends upon a transcript of evidence or proceedings taken by a court reporter, the procedure set forth in Sec. 4053 shall be followed. . . ."

[6] Public Acts 1993, No. 93-297, § 28, repealed General Statutes (Rev. to 1993) § 38a-369, effective January 1, 1994.

[7] See footnote 4.

by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." *Pinsky* v. *Statewide Grievance Committee*, [216 Conn. 228, 234, 578 A.2d 1075 (1990)]. Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence. *Statewide Grievance Committee* v. *Presnick*, [215 Conn. 162, 171–72, 575 A.2d 210 (1990)].' " *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 698, 669 A.2d 1202 (1996), quoting *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 812, 633 A.2d 282 (1993).

Rule 1.15 (b) provides that: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." The preliminary issue before this court, therefore, is whether Safeco and USAA had an interest in or were entitled to receive a portion of the respective settlement proceeds prior to the plaintiff's distribution of those funds to his clients.

General Statutes (Rev. to 1993) § 38a-369 (b) provides in pertinent part: "Whenever a person who receives basic reparations benefits for an injury recovers damages, either by judgment or settlement, from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under sections 38a-19 and 38a-363 to 38a-388, inclusive, or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the

extent that said basic reparations benefits have been paid, minus an amount which represents the insurer's contribution toward attorney's fees for the collection of basic reparations benefits. . . . *The insurer shall have a lien on the claimant's recovery for the amount to which he is entitled for such reimbursement; provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant.*" (Emphasis added.)

The legislature added the final phrase of § 38a-369 (b), "provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant"; Public Acts 1981, No. 81-836, § 2; in response to *Unigard Ins. Co.* v. *Tremont*, 37 Conn. Sup. 596, 598–601, 430 A.2d 30 (1981), which held that under the prior version of the statute an insurer could enforce the statutory lien against the insured's attorney. See *Shelby Mutual Ins. Co.* v. *Della Ghelfa*, 200 Conn. 630, 640, 513 A.2d 52 (1986). By amending the statute, the legislature clearly specified that the statutory lien by which Safeco and USAA claim interests in the settlement proceeds did not attach while the proceeds were in the plaintiff's hands.[8] See id., 641, citing 24 H. R. Proc., Pt. 24, 1981 Sess., p. 7862.

Rule 1.15 does not create third party interests, but, rather, requires an attorney to safeguard only those interests that otherwise exist at law. By amending § 38a-369 (b), the legislature insulated attorneys from the liability of reimbursing basic reparations benefits by

---

[8] "The usual and practical theory is that an attachment creates a lien, or a quasi lien of a limited nature, on the property attached. It is unquestionably a security for the debt, places the attached property in custodia legis, and gives the attaching [party] a special property interest therein. It is a direct appropriation by authority of law of specific property of the debtor, for the purpose of satisfying the demand . . . ." 6 Am. Jur. 2d 877, Attachment and Garnishment § 454, citing *Meyers* v. *C. I. T. Corp.*, 132 Conn. 284, 43 A.2d 742 (1945), and *Coit* v. *Sistare*, 85 Conn. 573, 84 A. 119 (1912).

providing that an insurer's lien does not attach to a claimant's recovery until the claimant has possession and is in control of the recovery. While settlement proceeds were in the plaintiff's control, therefore, Safeco and USAA did not have an interest in the proceeds. Their interests in the Jones and La Banca cases arose only after the plaintiff had distributed the proceeds to his clients. We conclude that the plaintiff did not have an ethical duty to notify the insurance companies of his receipt of the settlement proceeds or to deliver a portion of the proceeds to the insurance companies.

## III

The defendant claims finally that the trial court improperly concluded that Rule 1.6 of the Rules of Professional Conduct precluded the plaintiff from notifying the insurance companies of the receipt of settlement proceeds pursuant to rule 1.15 (b). Rule 1.6 (a) requires a lawyer to hold in confidence information relating to the representation of a client unless the client consents after consultation. The rule provides an exception, however, for "disclosures that are impliedly authorized to carry out the representation." Rules of Professional Conduct 1.6 (a). The defendant argues that because rule 1.15 (b) required the plaintiff to notify the insurance companies, the plaintiff fell within the exception of rule 1.6 (a). As discussed previously,[9] however, rule 1.15 (b) did not require the plaintiff to notify the insurance companies. We, therefore, find no merit in the defendant's claim that such a disclosure was impliedly authorized to carry out the representation of the client.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[9] See part II of this opinion.