[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant case is the presentment of an attorney pursuant to Practice Book § 31. Petitioner claims that Respondent has been guilty of misconduct not occurring in the actual presence of the court that involves his character, integrity and professional standing and conduct. Set forth as particulars of Petitioner's claim are
 1) Frederick D. Ross, Jr., (hereinafter, Respondent), Juris No. 051480, was admitted as a member of the Bar of the State of Connecticut on or about September 12, 1972.
 2) On or about September 23, 1993, the Respondent was reprimanded by the Statewide Grievance Committee in the matter of Karjanis v. Ross, Statewide Grievance Committee Complaint No. 92-0537, for violating Rule 1.3 of the Rules of Professional Conduct by accepting a retainer for a divorce action and then failing to act with reasonable diligence and promptness in pursuing the matter.
 3) On or about July 19, 1985, the Respondent was suspended by the Court, Fracasse, J., from July 19, 1985, until June 30, 1986, for misconduct not occurring in the presence of the court.
 4) On November 7, 1984, the Respondent was suspended by the Court, Freedman, J., for ninety days, for misconduct not occurring in the presence of the court.
 5) The Respondent failed to file an Attorney Registration form, as required by the Connecticut Practice Book for the year 1993, until the date of the hearing before a reviewing committee of the Statewide Grievance Committee on January 12, 1994.
 6) In or about July of 1992, the Respondent retained one Frank N. Mona to perform a real estate appraisal in connection with the Estate of Hilda Isabel Wilkinson, which the Respondent was probating.
 7) The appraisal was completed on or about July 29, 1992. CT Page 8220
 8) After several unsuccessful attempts to contact the Respondent to advise him that the appraisal was ready, Frank N. Mona delivered the appraisal directly to Kenneth T. Wilkinson, Administrator of the Estate of Hilda Isabel Wilkinson, and also delivered a bill for his services.
 9) Subsequent to the receipt of the appraisal and the bill, Kenneth T. Wilkinson gave the Respondent a check in the amount of three hundred dollars ($300.00), for the Respondent to pay the said Frank N. Mona for performing the appraisal.
 10) The Respondent deposited the check into his personal account, and did not pay the said Frank N. Mona until after Frank N. Mona had filed a grievance complaint.
 11) The Respondent's conduct, as hereinbefore set forth, violated Rules 1.15(a) and (b) and Rule 8.4(c) of the Rules of Professional Conduct.
A hearing was held on August 21, 1996.
 I
At the hearing, a stipulation of facts consisting of seven paragraphs and signed by the attorneys for both parties was placed in evidence. The content of numbers 1 through 6, inclusive, of the stipulation is the same as that of paragraphs 1, 5, 6, 7, most of 8 and 9 of Petitioner's complaint. These paragraphs of the complaint are, therefore, deemed admitted.
Also at the hearing, Respondent's counsel objected to number 7 of the stipulation which is the same as paragraph 10 of the complaint. He said he had agreed to its inclusion without proper preparation or without seeing the exhibits. From an explanation in Respondent's brief (p. 2 n. 2), the court finds that the dispute, if any, is as to whether Respondent deposited the check of Kenneth T. Wilkinson into his personal account or whether he just cashed it. A copy of the check is an exhibit. On its face is written "House Appraisal F. Mona 300.00." The reverse side contains Respondent's signature, the date "Aug. 4, 1992" (the same date the check was written) and the words "Processed CT. Natl Htfd Conn". In his explanation, Respondent admits that he did not deposit the check to a client's fund or trustee account. The CT Page 8221 stipulation of facts amounts to admissions by Respondent. Whether or not item number 7 can be modified is discussed in the next section of this memorandum. At this juncture, however, Respondent's explanation permits the court to and that after receiving the check from Kenneth T. Wilkinson, Respondent endorsed it but did not deposit the check or its proceeds in a client's fund or trustee account and did not pay Frank N. Mona until after said Mona had filed a grievance complaint.
Paragraph 2, 3 and 4 of the complaint refer to three prior disciplinary actions. The reprimand of September 23, 1993, the subject of paragraph 2, was proved by a certified copy of the letter of reprimand wherein the proposed decision of the reviewing committee was announced as adopted by the Statewide Grievance Committee together with a certified copy of the proposed decision. The suspensions of Respondent in 1985 by Judge Fracasse and in 1984 by Judge Samuel Freedman were proved by certified copies of the respective judgments.
At Petitioner's request, the court has taken judicial notice of the files in the two suspension cases. In Grievance Committeev. Frederick D. Ross, Jr., No. CV-82-0209928, the complainants were Joseph and Evelyn Ribon. The New Haven Grievance Committee conducted a hearing on their complaint and issued a formal reprimand to Respondent. An appeal by the complainants to the Statewide Grievance Committee resulted in a remand to the New Haven Committee with direction that Respondent be presented to the Superior Court for reprimand, suspension for a period of time or disbarment. On November 7, 1984, before the trial began, an agreement was reached for a stipulated judgment. In accord with the stipulation, Judge Samuel Freedman, on November 7, 1984, rendered a judgment reprimanding Respondent, suspending him from the practice of law for 90 days (from November 7, 1984 to February 6, 1985) and ordering Respondent to pay $700.00 to the complainants; said sum being the same amount as they claimed to have given him.
In Grievance Committee For The Sixth Judicial District of NewHaven v. Frederick D. Ross, Jr., No. CV84-0233101S, the complaint alleged that Rev. Felix Maguire claimed to have given $1,000.00 to Respondent for a down payment on the purchase of a condominium that was owned by a Mr. Nolan who Respondent represented. When Mr. Nolan could not produce a valid deed, Rev. Maguire decided to abandon the purchase but, according to the complaint, Respondent refused to return the money to him. Other allegations concerned CT Page 8222 the Committee's unsuccessful efforts to have Respondent provide an explanation. On June 6, 1985, Respondent was defaulted for failure to appear. The entry sheet reveals that a trial was held and a judgment of disbarment was entered on July 19, 1995 by Judge Fracasse.
In August, 1985, Respondent appeared pro se and later became a client of Attorney Ira Grudberg. Eventually, the judgment was opened and a new trial occurred before Judge Fracasse. In the judgment rendered on March 26, 1986, after the second trial, Judge Fracasse ordered Respondent suspended from the practice of law retroactive from July 19, 1985 through midnight June 30, 1986 and that Respondent repay the $1,000.00 given to him by Rev. Maguire on or before June 29, 1986.
Judge Freedman heard no evidence. Consequently he made no findings. Judge Fracasse had to have found facts in order to issue a judgment after a trial. His findings, however, do not appear in the file.
Aside from the stipulation of facts and the documentary evidence of the check, the reprimand and the two suspensions, Respondent produced oral testimony and additional documentary evidence. From this evidence the court finds that the facts set forth below were established.
When Respondent was called as a witness in his own behalf, he gave a Florida address were he now spends most of his time. Formerly, Respondent was a longtime resident of New Haven. He attended law school as a night student while he was a teacher in a local high school. In 1972, Respondent graduated from law school with honors. Between 1972 and 1983, Respondent, according to his curriculum vitae, was a municipal attorney for New Haven, a political candidate, a university lecturer and a general practitioner. In Respondent's general practice, he did much work in the geographical area courts.
From 1983 until 1987, Respondent practiced in New York City as an associate of Attorney John Y. Brown. Respondent then returned to private practice in New Haven. The curriculum vitae lists his office address as 265 College Street, New Haven. According to the curriculum vitae, Respondent is a registered lobbyist in Connecticut, Massachusetts, New York, Pennsylvania and Rhode Island. He is a member of the Connecticut and New York Bars as well as the bars of one or more of the federal district CT Page 8223 courts.
When Respondent returned to New Haven in 1987, he shared office space with Attorney Frank Piccolo on College Street. Two or three years later, Attorney Piccolo moved his office to 1204 Whitney Avenue, Hamden. At the same time Respondent moved his office and residence to his mother's house at 120 Willard Street in the Westville section of New Haven.
With regard to the allegation that Respondent failed to file an Attorney Registration form for the year 1993, he placed in evidence a photocopy of a certified envelope sent to him by Petitioner in December, 1992, and a later envelope sent by Petitioner on April 10, 1993. The certified envelope was addressed to Respondent at 1204 Whitney Avenue, Hamden, CT 06517. The later envelope was addressed to him at 120 Willard Street, New Haven, CT 06515. Respondent had not given the Whitney Avenue address to Petitioner and he never received the certified envelope. Presumably, the certified envelope contained the registration form that Respondent was to complete and return since his testimony was that "[he] was not aware that [he] was not receiving whatever [he] needed to receive."
On April 20, 1993, Petitioner knew and sent correspondence to Respondent's correct address. By that date, Respondent had returned from an extended visit with his fiancee in Hilton Head, South Carolina. Remaining unexplained is why the registration form was not filed until July 12, 1994 as paragraph 5 of the complaint alleges and as number 5 of the stipulation of facts admits.
On August 4, 1992, Respondent went to the Connecticut National Bank with Kenneth T. Wilkinson, the executor or administrator of the estate of his mother Hilda Isabel Wilkinson. Respondent, as attorney for the fiduciary, had made an appointment with a bank officer to close out the account. Under the terms of Mrs. Wilkinson's will, the fiduciary was directed to pay all taxes and expenses from this particular account and then to divide the balance between himself and his brother. The expenses of the estate had either been paid prior to August 4, 1992 or it was the intention of the fiduciary pay them to date.
The bill of Frank N. Mona for his appraisal services was directed to Respondent personally. To pay this bill, Kevin T. Wilkinson made a check payable to Respondent for $300.00 on CT Page 8224 August 4, 1992. New accounts at the Connecticut National Bank were opened by Kenneth T. Wilkinson and his brother with their respective shares of the bank account that had been closed.
Respondent did not have an account at the Connecticut National Bank. His accounts were with the American National Bank and the now defunct Founders Bank. On August 4, 1992, however, Respondent cashed the $300.00 check at the Connecticut National Bank and put the three hundred dollars in his wallet. He admitted testifying at a hearing conducted by Petitioner's reviewing committee that "[he] just probably put it (the money) in [his] personal account." This testimony appears to have promoted item number 7 of the stipulation of facts. If Respondent is allowed to disavow part of item number 7, the evidence could be construed to mean that he held and used the proceeds of the cashed check. Respondent testified that he intended to pay Frank N. Mona when the final account of the estate was approved in late spring of 1993. When Respondent returned from Hilton Head in April 1993, however, a hearing had been scheduled by the New Haven Grievance Committee. He paid Frank N. Mona on May 7, 1993, after contacting the attorney for the local grievance committee.
Respondent suffered from a malignant melanoma that was surgically removed but now has developed lymphoma. He has no current active files in Connecticut. When he comes here, he stays with his mother who now resides in Branford.
Two respected members of the bar testified on Respondent's behalf and letters were received from three attorneys attesting to the quality of his work and vouching for his integrity. One of the testifying lawyers and one of the letter-writers mentioned his divorce which they described as acrimonious. The divorce occurred in the early 1980's.
 II
Whether item number 7 of the stipulation can be modified in any way depends upon its status as either a judicial or an evidentiary admission. If an admission is a judicial one, it dispenses with the production of evidence by the opposing party as to the fact admitted and is conclusive on the party making it.Pederson v. Vahidy, 209 Conn. 510, 520 (1989). An evidentiary admission can be contradicted and perhaps explained away by evidence offered at the trial. Bochicchio v. Petrocelli,126 Conn. 336, 340 (1940). Under ordinary circumstances a formal CT Page 8225 stipulation of facts constitutes a mutual judicial admission and should be adopted by the court in deciding the case. Pyne v. NewHaven, 177 Conn. 456, 464 (1979); Central Coat, Apron LinenService v. Indemnity Ins. Co., 136 Conn. 234, 236 (1949).
There have been certain situations, however, where courts have refused to be bound by an express stipulation of the parties. But these situations appear to be limited to instances involving public policy, Peiter v. Degenring, 136 Conn. 331,338-40 (1949) (trust should not be terminated solely because parties have so stipulated) or because of infirmity in one of the parties. Kanopka v. Kanopka, 113 Conn. 30, 39 (1931) plaintiff's description of accident did not amount to a judicial admission when the accident rendered her unconscious and she had only a limited knowledge of English). These decisions furnish reasons that are much more cogent then those asserted by Respondent's counsel. The court believes that Respondent should be held to the essence of his stipulation. Accordingly item number 7 of the stipulation and thus paragraph 10 of the complaint is considered to be admitted to the extent that support for it exists in other evidence. From synthesis of Respondent's stipulation, the explanations provided by his brief and his testimony at the hearing, the court is able to find that after; Respondent cashed the check of Kenneth T. Wilkinson at the Connecticut National Bank, he deposited the money received therefrom into his personal account.
 III.
The sections of the Rules of Professional Conduct that are at issue in this proceeding read as follows:
Rule 1.15 Safe keeping Property
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for such period of time as may be required under applicable law after termination of the representation. CT Page 8226
 (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 Rule 8.4 Misconduct
It is professional misconduct for a lawyer to:
 (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
Respondent asserts that he cannot be found to have violated the above-reference sections for two reasons. First, because "it is anything but clear that the money [received from cashing Wilkinson's check was property of clients or third persons in [Respondent's] possession." And second, the violation was not established by clear and convincing evidence.
A check is defined in the Uniform Commercial Code (UCC) as "a draft . . . payable on demand and drawn on a bank." Gen. Stat. § 42a-3-104. At first glance, this definition and Silver v.Statewide Grievance Committee, 42 Conn. App. 229, 237 (1996) with its language that "[r]ule 1.15 does not create third party interests but, rather, requires an attorney to safeguard only those interests that otherwise exist at law" might be thought to support Respondent's position. From an examination of the content of Rule 1.15(a) and (b), however, it is evident that the property interests referred to therein go far beyond the definition of a check provided by the UCC.
Moreover, upon closer analysis, Silver v. Statewide GrievanceCommittee, supra is not beneficial to Respondent. In Silver, the dispute was whether the attorney or the client had the responsibility of reimbursing the basic reparations insurer from the proceeds of a recovery. The court's decision that the insurer's lien would not attach until the proceeds of the recovery were in the possession and control of the client, is based upon the express language of § 38a-369(b). In the CT Page 8227 present situation, where no statute restricts the purview of Rule 1.15, the word "property" should be interpreted according to its common understanding as expressed in the law and in dictionaries.Southington v. State Board of Labor Relations, 210 Conn. 549, 461 (1989); see Gen. State. § 1-1(a).
Black's Law Dictionary (6th ed. 1990) at page 1095 defines "property" as the term "commonly used to denote everything that is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest and includes real and personal property, easements, franchises, and incorporeal hereditaments." Krafick v. Krafick,234 Conn. 783, 794 (1995). Interpreting the word "property" broadly is consistent with the purpose of a disciplinary proceeding, a proceeding sui generis, the object of which is not the punishment of the offender but to safeguard the courts and the public from the misconduct or unfitness of persons who are licensed to perform the important functions of the legal profession. Statewide Grievance Committee v. Shluger, 230 Conn. 668,675 (1994); Statewide Grievance Committee v. Rozbicki,219 Conn. 473, 488 (1991), cert. denied 502 U.S. 1094,112 S. CT. 1170, 117 L.Ed.2d 416 (1992). To the quotation from Black's dictionary reported in Krafick v. Krafick, supra, the court would add "even if the imposition of a constructive trust would be required." A constructive trust arises when a person has obtained the legal right to property which, in equity and good conscience, he ought not to hold and enjoy. Aetna Life Casualty Co. v.Union Trust Co., 2301 Conn. 779, 791 (1994). Simply put, Frank N. Mona was entitled to be paid from the proceeds of Kenneth T. Wilkinson's check which Respondent had no right to commingle with his personal funds. Conversely, Wilkinson had a right to have Respondent use the proceeds of the check to pay Mona and not to commingle them.
A prohibition, such as exists in Rule 1.15(a), against commingling client's funds or property with an attorney s personal funds or property is present in all lawyer codes. In general, the prohibition against commingling has been applied equally to situations where the lawyer was holding funds of the client or funds of a third person who was not a client. C. Wolfrom, Modern Legal Ethics (West 1986) 176-78. The following decisions illustrate application of the prohibition against commingling where third parties are involved: Johnson v. StateCT Page 8228Bar, 64 Cal.2d 153, 49 Cal.Rptr. 97, 98 (1966), "When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. Thus, the funds in his possession are impressed with a trust and his conversion of such funds is a breach of the trust;"Louisiana State Bar Ass'n. v. Orpys, 427 So.2d 842, 844 (La. 1083), although the compensation carrier was not the attorney's client, a fiduciary relationship existed so that he was obligated to reimburse the insurance company from his client's settlement; and State ex rel. Oklahoma Bar Ass'n. v. Smith, 615 P.2d 1014,1017 (Okla. 1980), "Where money or other property has been entrusted to an attorney for a specific purpose, he must apply it to that purpose."
Not only did Respondent commingle the proceeds of Wilkinson's check with his own funds, he also did not notify Frank N. Mona promptly that he had received money to pay Mona's fee. Thus, Rule 1.15(b) as well as 1.15(a) has been violated. The fact that Respondent ultimately paid Mona does not constitute a defense. In a disciplinary action, payment at a later date does not cure the violation. State ex rel. Oklahoma Bar Ass'n v. Smith, supra at 1017; Louisiana State Bar Ass'n v. Oys, supra at 843, 844.
Rule 8.4(c) is a general pronouncement of actions that will amount to professional misconduct so that the behavior in question will most likely be violative of another rule as well. ABA, Annotated Model Rules of Professional Conduct (3d ed. 1996) 559. In fact, the commentary in 1 Connecticut Practice Book Ann. (1996 Supp.) 36 states that 8.4(c) alone should not give rise to disciplinary action. That is not the case here. The commingling of the money received for Wilkinson's check with Respondent's own funds constituted a misuse or misappropriation of the funds of a client and falls within the prohibition of both Rule 1.15 and Rule 8.4(c). See The Florida Bar v. Ward, 599 So.2d 650, 651
(1992).
Practice Book § 27 provides that
 An attorney shall send prompt written notice of a change in his mailing and street address to the statewide grievance committee on a registration form approved by the statewide bar counsel and to the clerks of the courts where he has entered an appearance.
This section is a regulatory matter and in determining CT Page 8229 whether it has been violated, a party's intention is immaterial. From the facts previously found, the court concludes that Respondent violated this provision also.
Clear and convincing evidence is the standard used to determine whether allegations in attorney disciplinary proceedings were proven. Statewide Grievance Committee v.Presnick, 215 Conn. 162, 171-72 (1990). This burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true and that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. Lopinto v. Haines, 185 Conn. 527, 534 (1981); Daceyv. Connecticut Bar Ass'n, 170 Conn. 520, 537 (1976). There must be more than average certainty on the part of the factfinder. Inre Juvenile Appeal (84-3), 1 Conn. App. 463, 468 (1984). Contrary to Respondent's suggestion, the court concludes that all of Petitioner's allegations were proven clearly and convincingly. Much of the evidence could be labeled "by way of confession and avoidance."
 VI.
With respect to the judgment to be imposed, the court has options of a reprimand, suspension for a period of time, disbarment or such other discipline as may be deemed appropriate. Petitioner has asked for disbarment. Respondent requests a reprimand.
In State v. Shluger, supra at 673 n. 10, mention is made of the Standards of the American Bar Association in determining the appropriate discipline. The Standards utilize aggravating versus mitigating factors. Both type of factors were present in this case and the court wishes to say what it considered and what it did not. The court considered as mitigating, the testimony offered in Respondent's behalf and the letters that were written for him. The court did not consider the divorce which was too remote or the illness which, in the court's opinion was unrelated to the issues. Aggravating factors were the two previous suspensions and the reprimand as well as the nature of the misconduct proven in the present case.
Misappropriating a client's funds by commingling them with those of a lawyer and breaching a fiduciary duty are regarded as serious lapses. In this case, the amount may be small but the CT Page 8230 principle is large. Apt on the question of discipline is a quotation from the opinion of the Supreme Court of Florida in TheFlorida Bar v. Ward, supra at 651. "We have stated on numerous occasions that misuse of client's funds is one of the most serious offenses that a lawyer can commit and that we will not be reluctant to disbar an attorney for this type of offense under appropriate circumstances." This court does not believe that the circumstances warrant disbarment but it will impose a definite suspension for three years.
Effective November 1, 1996, Respondent will be suspended from the practice of law in the courts of the State of Connecticut for a period of three years or until midnight on October 31, 1999.
Barnett, J.